384 A.2d 1285

**COMMONWEALTH ex rel. Theresa PALCHINSKI, Appellant,**

**v.**

**Edward PALCHINSKI.**

Superior Court of Pennsylvania.

Argued Nov. 22, 1977.

Decided April 13, 1978.

---

172

A. D. Pyle, Pittsburgh, with him Jeannie A. Barrett, Pittsburgh, for appellant.

William F. Nee, Arnold, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

Appellant contends that the lower court erred in vacating an unappealed support order, entered three years previously, on the basis of a blood test which excluded appellee as the child's father. We agree and, therefore, reverse the order of the lower court.[1]

The pleadings and affidavits reveal the following facts. Appellant and appellee were married on July 8, 1967. In May of 1972, appellant filed a civil complaint[2] in the Court of Common Pleas of Westmoreland County in which she alleged that appellee had failed to support her and their three year old daughter, Stacie, since May 7, 1972. On September 26, 1972, the lower court dismissed the case without prejudice upon learning that appellee was a patient at Torrance State Hospital. However, the court subsequently re-opened the case on July 11, 1973, when it was advised that appellee had left the hospital and was gainfully employed. On July 23, 1973, appellee received notice of a support hearing to be held on August 3, 1973. A copy of that notice was also sent to appellee's attorney who had entered his appearance as appellee's counsel in prior support proceedings. Appellee appeared at the hearing on August 3, 1973, without counsel. At that time, appellant and appellee entered into a written support agreement which provided for appellee to pay appellant the sum of $200.00 per month.

1. Appellant also contends that the doctrine of estoppel precludes appellee from denying paternity and demanding blood tests three years after the entry of a support agreement to which he consented and with which he complied. Because we find that the unappealed support order of 1973 established the issue of paternity and thereby prevented subsequent blood tests to attack paternity, we find it unnecessary to reach the issue of estoppel.

2. The Civil Procedural Support Law, Act of July 31, 1953, P.L. 431, § 1; 62 P.S. § 2043.31 et seq.

Fifty dollars per month was for appellant's support; the remaining $150.00 per month was for the support of the two children, Stacie, born on October 18, 1968, and Julie, born on May 6, 1973. The agreement was signed and executed by both parties. In accordance with local practice, the court entered the agreement as an order of court on August 3, 1973. Appellee made support payments until November of 1973 when he was hospitalized and ceased to be employed. He did not appeal from the support order.

The case again appeared before the lower court in 1976 when appellee filed for a divorce. Prior to entering the divorce decree, the lower court, in accord with its practice, held a preliminary hearing on March 8, 1976, in order to resolve support and custody questions. Appellee appeared at that hearing and conceded that in order to expedite his divorce, and on the advice of counsel, he entered into a consent order on March 8, 1976, which provided for $150.00 per month for the support of the two children, Julie and Stacie Palchinski.

On April 26, 1976, after having obtained his divorce, appellee petitioned the lower court for and received an order directing appellant and Julie Palchinski to submit to blood tests. Appellant filed a petition to strike the order on May 13, 1976, in which she maintained that the doctrine of *res judicata* prevented further proceedings on the issue of paternity and thus precluded blood tests. After argument on this issue, the lower court denied the petition to strike and ordered the blood tests. The results of the blood tests excluded appellee as the father of Julie. On November 23, 1976, the lower court vacated the support order of March 8, 1976. This appeal followed.

Appellant contends that the lower court erred in ordering blood tests which enabled appellee to contest paternity three years after the entry of a support order for Julie Palchinski. Our Court has held that a support order necessarily determines the issue of paternity. If a party wishes to challenge a finding of paternity, he must do so by appealing directly from the support order. In the absence of an appeal, a finding of paternity is established as a

matter of law. *Commonwealth v. Nedzwecky*, 203 Pa.Super. 179, 199 A.2d 490 (1964). Consequently, in *Nedzwecky, supra*, we upheld a lower court's refusal to grant blood tests to a petitioner who denied paternity of a child provided for in a prior support order. Although blood tests were unavailable at the time of the entry of the original order of support,[3] our Court reasoned that "in the absence of an appeal [from the support order] the fact of . . . paternity . . . became established as a matter of law. A relevant fact necessarily determined as a prerequisite to the entry of an original support order may not, under the doctrine of res judicata, be challenged or put at issue in any subsequent proceeding." *Commonwealth v. Nedzwecky, supra*, 203 Pa. Super. at 182, 199 A.2d at 491. *See also, Commonwealth ex rel. Scarpato v. Scarpato*, 190 Pa.Super. 45, 151 A.2d 783 (1959); *Commonwealth ex rel. De Sheilds v. De Sheilds*, 173 Pa.Super. 233, 98 A.2d 390 (1953).

In the instant case, the issue of paternity was decided at the August 3, 1973 support hearing. At that time, appellee had the opportunity to appear and assert his rights and defenses. Although a copy of the notice of the hearing

**3.** The Uniform Act on Blood Tests to Determine Paternity, Act of July 13, 1961, P.L. 587, § 1; 28 P.S. § 307.1 provides:

"In a civil action in which paternity parentage or identity of a child is a relevant fact, the court upon its own initiative or upon suggestion made by or on behalf of any person whose blood is involved may, or upon motion of any party to the action made at a time so as not to delay the proceedings unduly, shall order the mother, child and alleged father to submit to blood tests. If any party refuses to submit to such tests, the court may resolve the question of paternity, parentage or identity of a child against such party, or enforce its order if the rights of others and the interests of justice so require." Because the Act permits blood tests in any action on which paternity is a relevant fact, the statute applies to actions brought for the support of minor children born during wedlock. *Com. ex rel. Goldman v. Goldman*, 199 Pa.Super. 274, 184 A.2d 351 (1962). The Act of 1961 repealed the Act of May 24, 1951, P.L. 402, § 1; 28 P.S. § 306 which did not permit blood tests to challenge the paternity of children born during wedlock. *See Com. ex rel. O'Brien v. O'Brien*, 390 Pa. 551, 136 A.2d 451 (1957). At the time of the entry of the support order in *Nedzwecky, supra*, i. e., 1961, the Act of 1951 was in effect. Consequently, the defendant was unable to request blood tests at that time to challenge the paternity of a child born during wedlock.

was sent to appellee's attorney, appellee chose to appear by himself and to enter into a consent agreement and court order to support both Stacie and Julie Palchinski. Moreover, at the time of the hearing, appellee, unlike the petitioner in *Nedzwecky*, had the opportunity to demand blood tests but he neglected to do so for three years. Appellee also failed to appeal from the original order of support. Therefore, *res judicata* would operate to foreclose a subsequent challenge on the issue of paternity.

■ Appellant seeks to avoid the doctrine of *res judicata* by arguing that the August 3, 1973 support proceeding should not preclude a subsequent challenge to paternity because at the time of the support proceeding he was unrepresented by counsel and under the care of two psychiatrists. These arguments are unpersuasive. First, appellee's uncounseled appearance at the August 3, 1973 support proceeding did not detract from his consent to the 1973 support order. Second, although appellee was a patient in a mental institution in September, 1972, when the original support complaint was filed, and was re-hospitalized three months after the support hearing, at the time of the support hearing, August 3, 1973, he was not institutionalized and was employed. In fact, the lower court had dismissed the complaint without prejudice in 1972 upon learning of appellee's hospitalization and did not re-open the case until learning that appellee had been discharged from the hospital and was employed. Furthermore, appellee has introduced no evidence to demonstrate the nature or extent of his alleged mental disabilities nor does the record support his contention that he was under the care of psychiatrists at the time of the support order. In fact, the payment record kept by the Domestic Relations Office of the Westmoreland County Court of Common Pleas indicates that appellee was sufficiently competent to work at a full-time job during the months of August, September, and October of 1973. The record also establishes that appellee was sufficiently cognizant of the nature and consequences of the support proceeding and order to make support payments pursuant to that order for those months. In sum, we find no evidence which

undermines appellee's consent to the support order.[4]  More-over, appellee conceded that three years after the original support order, on the advice of counsel, he entered into the March 8, 1976 modified support order which provided for the support of both Stacie and Julie Palchinski.  By agreeing to support Julie pursuant to that order, appellee effectively again acquiesced in the finding of paternity underlying the order.

We conclude that appellee had ample opportunity to con-test the finding of paternity made by the lower court on August 3, 1973.  Because appellee failed to demand blood tests at that time or to appeal from the order of support, we hold that he is now precluded from challenging the finding of paternity three years after the entry of the order.  Ac-cordingly, the lower court erred in ordering appellant and Julie Palchinsky to submit to blood tests.  We reverse the lower court's order vacating the support order.

Order reversed.

SPAETH, J., concurs in the result.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

---

4.  Because of this factual finding, we need not determine whether incompetency at the time of a support hearing would forestall the application of *res judicata* to subsequent challenges on the issue of paternity.