523 A.2d 821

**Mary Ellen MANZE, Appellee,**

v.

**Charles J. MANZE, Jr., Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 18, 1986.

Filed April 8, 1987.

154

David S. Kaplan, Pottstown, for appellant.

Michael P. Gottlieb, Norristown, for appellee.

Before CAVANAUGH, OLSZEWSKI and TAMILIA, JJ.

OLSZEWSKI, Judge:

This is an appeal from a judgment entered on an order denying exceptions to a decree nisi which dismissed appellant's petition to terminate support.[1] Appellant, Charles J. Manze, Jr., argues that the trial court erred in finding that he may not now challenge paternity. After a careful review of the record, we conclude that the trial court correctly rejected appellant's arguments. We therefore affirm.

The events giving rise to this appeal are as follows. Appellant and appellee, Mary Ellen Manze, were married on January 30, 1970. Appellee was pregnant at the time and three and a half months later, on May 12, 1970, gave birth to a daughter, Deborah. Ten years later the parties separated and appellee filed a petition against appellant for spousal and child support. In an agreed order dated December 18, 1980, appellant was ordered to pay $10 per week for the support of appellee and $65 per week for the support of Deborah.[2] The parties included appellant's sup-

---

1. By order dated February 2, 1987, the trial court adopted as its final decree the decree nisi of October 12, 1984. We therefore treat this appeal as if properly taken from the final decree. *See* Pa.R.A.P. 905(a).

2. The record indicates that a conference was scheduled before a Domestic Relations Officer. The order states that the parties ap-

port obligation in their separation and property settlement agreement, which in turn was incorporated into a decree of divorce dated March 2, 1982.

Appellant remarried on October 23, 1982 and, after trying unsuccessfully to have children, learned that he never could have fathered a child. In November of 1983, appellant filed a petition to modify or vacate the support order based on the fact that he had been laid off from work.[3] Thereafter, in January of 1984, appellant requested and was granted an order directing the parties and Deborah to submit to blood grouping tests. The results of the HLA testing excluded appellant as the father of Deborah. As a result, on March 26, 1984, the lower court dismissed the support action against appellant. On April 6, 1984, however, the trial court vacated its dismissal order of March 26, 1984, and directed that the matter be listed before a judge without prior submission to the support master. Appellant then filed, on June 7, 1984, the instant petition to terminate support based on the HLA blood test results. On October 12, 1984, after a hearing on appellant's June 7, 1984 petition, the trial court issued an adjudication and decree nisi ruling that res judicata and equitable estoppel precluded appellant from denying paternity. The decree nisi dismissed appellant's petition and directed that the decree become the final order of the court unless exceptions were filed within ten days. Appellant filed exceptions on October 22, 1984, which the court denied by order entered August 8, 1985. Appellant appealed the August 8, 1985 order on September 5, 1985.

We observe first that this appeal presents a question of timeliness. Although appellee does not raise this issue, it concerns our jurisdiction and we may therefore raise it *sua sponte. Penjerdel Refrigeration Corp., Inc. v. R.A.C.S., Inc.,* 296 Pa.Super. 62, 64, 442 A.2d 296, 297 (1982). Specifically, we question whether this appeal should have been

peared and agreed to the court's entry of the order in their absence and that they waived their privilege to appear before the court and be heard.

3. This petition does not mention appellant's inability to have children.

taken directly from the trial court's October 12, 1984 determination denying appellant's petition to terminate support rather than from the court's August 8, 1985 order dismissing appellant's exceptions to the October 12, 1984 adjudication. Problematic is the trial court's entry of a decree nisi indicating that exceptions could be filed to its determination dismissing appellant's petition and appellant's subsequent filing of exceptions to that determination.

The Pennsylvania Rules of Civil Procedure direct that the procedure upon a petition to terminate support shall be in accordance with Pa.R.C.P. 1910.10, et seq. Pa.R.C.P. 1910.-19. Pursuant to Rule 1910.10, the action is to proceed as prescribed by Rule 1910.11 unless the court by local rule adopts the alternative hearing procedure of Rule 1910.12. Rules 1910.11 and 1910.12 both prohibit the filing of post-trial motions to the court's final order of support.[4] Under these rules, the court's final order is entered after proceedings which begin with an office conference before a hearing officer. Assuming then, that these rules are followed and a final order entered by the court, exceptions may not be filed to a determination dismissing a petition to terminate support and that determination should be appealed directly.

The instant action, however, did not proceed in accordance with the foregoing rules. Specifically, the petition to terminate support was heard by a family court judge in the first instance, without prior referral to a hearing officer. Thereafter, instead of entering a final order of support, the trial judge entered a decree nisi stating that it would become the final order if no exceptions were filed within ten days. Appellant then filed exceptions within ten days of that decree and did not take his appeal until the court dismissed his exceptions.

■ We confronted a similar situation in *Baraff v. Baraff,* 338 Pa.Super. 203, 487 A.2d 925 (1985). In that case, a petition for reduction of support did not proceed in accord-

---

4. Prior to amendments adopted October 19, 1983, effective January 1, 1984, these rules prohibited the filing of exceptions to the court's final order of support.

ance with Rules 1910.11 and 1910.12 in that it was heard by a judge in the first instance. The judge subsequently entered an order which directed entry of judgment on support arrearages and continued monthly payments for child support. Referring to Rule 1910.12(g), we concluded that exceptions taken from that order were improper and held that an appeal taken from the denial of those exceptions and filed more than thirty days after the entry of the support order was untimely. If *Baraff's* holding applies to the case at bar, we must quash appellant's appeal as untimely. Upon closer examination of *Baraff*, however, we find that it is distinguishable. We specifically noted in *Baraff* that the trial court's order was a final order. Instantly, although the trial judge's determination of October 12, 1984 may have been final in substance, it was on its face a decree nisi subject to the filing of exceptions. Appellant thus proceeded in accordance with the trial court's direction. Importantly, appellant did appeal within thirty days of the entry of the trial court's dismissal of his exceptions.[5] Under these circumstances, we decline to apply *Baraff* and therefore, will not quash this appeal as untimely filed. *See Commonwealth v. Anwyll*, 333 Pa.Super. 453, 482 A.2d 656 (1984) (Court would not quash appeal as untimely where trial court purported to extend the time for appeal to thirty days after disposition of a motion for reconsideration under Pa.R.Crim.P. 1410; given the trial court's misstatement of the appeal period, appellant's failure to appeal on time

---

**5.** Thus, the instant situation is distinguishable from that which occurred in *United States National Bank in Johnstown v. Johnson*, 506 Pa. 622, 487 A.2d 809 (1985). There, the appellant improperly took exceptions to preliminary objections and then failed to appeal within thirty days of the entry of the Court en banc's dismissal of its exceptions, instead waiting until the appellee reduced the en banc order to judgment. As a result, our Supreme Court refused to consider an argument that the Court en banc's acceptance and disposition of the exceptions may have misled the appellant into believing it was proceeding properly and that fairness would require the Court to forgive the appellant for not appealing directly from the order sustaining the appellee's preliminary objections. Had the appellant appealed within thirty days of the Court en banc's dismissal of its exceptions, the Supreme Court apparently would have considered this argument.

appeared to be the result of a breakdown in the court's operation.).

We now reach the merits. The trial court concluded that appellant cannot now assert his lack of paternity as a basis for terminating his support payments. For the reasons which follow, we agree.

■ First, as found by the trial court, appellant is precluded from denying paternity under the doctrine of res judicata. As this Court has repeatedly held, a support order necessarily determines the issue of paternity. *Shindel v. Leedom*, 350 Pa.Super. 274, 278, 504 A.2d 353, 355 (1986); *Commonwealth ex rel. Palchinski v. Palchinski*, 253 Pa.Super. 171, 174, 384 A.2d 1285, 1287 (1978); *Commonwealth ex rel. Nedzwecky v. Nedzwecky*, 203 Pa.Super. 179, 182, 199 A.2d 490, 491 (1964). To challenge paternity, an appeal must be taken directly from the support order itself. Absent any appeal, the issue of paternity is established as a matter of law. *Shindel v. Leedom, supra.*, 350 Pa.Super. at 278, 504 A.2d at 355; *Commonwealth ex rel. Palchinski v. Palchinski, supra*, 253 Pa.Super. at 174–175, 384 A.2d at 1287; *Commonwealth ex rel. Nedzwecky v. Nedzwecky, supra.*, 203 Pa.Super. at 182, 199 A.2d at 491. As we reasoned in *Nedzwecky, supra.*, "(a) relevant fact necessarily determined as a prerequisite to the entry of an original support order may not, under the doctrine of res judicata, be challenged or put at issue in any subsequent proceeding." *Commonwealth ex rel. Nedzwecky v. Nedzwecky, supra.*, 203 Pa.Super. at 182, 199 A.2d 491.

■ In the instant case, the issue of paternity was determined in December of 1980 when appellant chose to enter into a court order to support Deborah. Appellant could have demanded blood tests at that time but neglected to do so. As pointed out by the trial court, while appellant may not have known of his inability to procreate at the time he signed the support order, he was aware of other circumstances surrounding appellee's pregnancy which gave him

reason to question Deborah's paternity.[6] Having entered into the support order under these circumstances and having failed to appeal, appellant may not now challenge paternity.

■ Appellant argues that appellee waived the issue of res judicata because she did not raise it at the time appellant requested a blood test, nor in response to the petition to terminate support. The Pennsylvania Rules of Civil Procedure governing support actions, however, include nothing which would suggest that a responsive pleading is required under the circumstances of this case. *See* Pa.R. C.P. 1910.1 et seq. In *Cynthia H. v. Milton M.*, 328 Pa.Super. 332, 476 A.2d 1357 (1984), we addressed whether the lower court correctly concluded that the appellee had not waived his right to raise the bar of the statute of limitations where he did not file an answer with new matter including the statute of limitations defense until some twenty-two months after the appellant filed her complaint for support. Finding that the trial court did not abuse its discretion in allowing the appellee to raise the statute of limitations defense at this time, we observed that:

It is especially appropriate for the decision whether to allow the late pleading to rest within the sound exercise of the trial court's discretion in paternity and support actions, where there are no mechanical rules or stated time limits to place a party on notice that his pleading was out of order or that he has waived the right to assert certain defenses.

*Id.*, 328 Pa.Super. at 337, 476 A.2d at 1359. Accordingly, we decline to find that appellee waived the issue of res judicata in the matter at bar.

■ Even if the doctrine of res judicata is not applicable, as the trial court also observed, appellant may not now deny his obligation to support Deborah by virtue of the doctrine of equitable estoppel. Dispositive under this theory is

**6.** Specifically, the trial court found that prior to marriage, appellee had at least one other boyfriend and that appellant questioned paternity and had reason to question paternity.

"whether the putative father has indicated by his conduct that the child is his own." *Commonwealth ex rel. Gonzalez v. Andreas*, 245 Pa.Super. 307, 311, 369 A.2d 416, 418 (1976). "Where the husband has accepted his wife's child and held it out as his own over a period of time, he is estopped from denying paternity." *Id.*, 245 Pa.Superior Ct. at 310–311, 369 A.2d at 418 quoting *Commonwealth ex rel. Goldman v. Goldman*, 199 Pa.Super. 274, 283, 184 A.2d 351, 355 (1962). As we observed in *Chrzanowski v. Chrzanowski*, 325 Pa.Super. 298, 472 A.2d 1128 (1984), this Court has found that parental relationships can be established constructively and that such relationships and their concomitant duties merit judicial recognition and enforcement.

Instantly, as the trial court found, appellant acknowledged Deborah as his daughter and assumed the responsibilities of parenthood throughout a ten-year marriage. Appellant subsequently affirmed his responsibility to support Deborah by entering into the support order of December, 1980 and then an agreement to modify that order in March of 1982. Given his acceptance and support of Deborah during this time period, appellant may not now renounce his parental duties.[7] *Chrzanowski v. Chrzanowski, supra.*, 325 Pa.Super. at 306, 472 A.2d at 1131–1132.

We note that our decision does not conflict with the provisions of the Uniform Act on Blood Tests to Determine

---

**7.** As our Court explained in *Gonzalez:*

Absent any overriding equities in favor of the putative father, such as fraud, the law cannot permit a party to renounce even an assumed duty of parentage when by doing so, the innocent child would be victimized. Relying upon the representation of the parental relationship, a child naturally and normally extends his love and affection to the putative parent. The representation of parentage inevitably obscures the identity and whereabouts of the natural father, so that the child will be denied the love, affection and support of the natural father. As time wears on, the fiction of parentage reduces the likelihood that the child will ever have the opportunity of knowing or receiving the love of his natural father. While the law cannot prohibit the putative father from informing the child of their true relationship, it can prohibit him from employing the sanctions of the law to avoid the obligations which their assumed relationship would otherwise impose.

*Commonwealth ex rel. Gonzalez v. Andreas*, 245 Pa.Super. at 312, 369 A.2d at 419.

Paternity ("Uniform Act"), Act of July 9, 1976, P.L. 586, No. 142, 42 Pa.C.S.A. Sec. 6131 et seq. Appellant argues that the blood test results conclusively show that he is not Deborah's natural father and that we must therefore terminate his support obligations pursuant to the Uniform Act. We disagree.

Section 6133 delineates the authority for ordering that blood tests be taken, providing that:

> In any matter subject to this subchapter *in which paternity, parentage or identity of a child is a relevant fact,* the court upon its own initiative or upon suggestion made by or on behalf of any person whose blood is involved may, or upon motion of any party to the action made at a time so as not to delay the proceedings unduly, shall order the mother, child and alleged father to submit to blood tests.

42 Pa.C.S.A. Sec. 6133 (emphasis added). We have previously found that the issue of paternity was necessarily determined upon entry of the agreed order of support in December of 1980. Paternity is therefore not a relevant fact in this proceeding. Consequently, we do not deem ourselves bound to resolve the question of paternity according to the blood test results, as provided in Section 6136 of the Uniform Act.[8]

In fact, at the time our Court decided *Palchinski* and *Gonzalez,* the Uniform Act in effect prior to the current Uniform Act[9] included provisions similar, if not identical, to Sections 6133 and 6136. In both *Palchinski* and *Gonzalez,* the lower court had ordered blood tests which subsequently indicated that the party contesting paternity was not the

**8.** Section 6136 provides:
> If the court finds that the conclusion of all the experts as disclosed by the evidence based upon the tests are that the alleged father is not the father of the child, the question of paternity, parentage or identity of a child shall be resolved accordingly. If the experts disagree in their findings or conclusions, the question shall be submitted upon all the evidence.

**9.** The Uniform Act on Blood Tests to Determine Paternity, Act of July 13, 1961, P.L. 587, No. 286, 28 P.S. Sec. 307.1 et seq.

natural father. In spite of the former version of Section 6136, our Court expounded and applied the doctrine of res judicata in *Palchinski* and the doctrine of equitable estoppel in *Gonzalez* to preclude the putative father from challenging paternity and thereby terminating his support obligations. For these reasons, we reject appellant's argument that we must terminate his obligations under the provisions of the Uniform Act.

In view of the foregoing, the lower court properly dismissed appellant's petition to terminate support. We therefore affirm.

Affirmed.