550 A.2d 1019

**Donna A. WACHTER, Appellee,**

v.

**Joseph P. ASCERO, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 14, 1988.

Filed Dec. 1, 1988.

Herbert R. Weiman, Philadelphia, for appellant.

Fern Lynn Kletter, Assistant District Attorney, Philadelphia, for appellee.

Before OLSZEWSKI, DEL SOLE and JOHNSON, JJ.

DEL SOLE, Judge:

This is a direct appeal from an order denying a petition to vacate a support order which provided that Joseph P. Ascero pay $12.00 per week for the support of Joseph Michael Wachter, plus $3.00 arrears due the Department of Public Assistance.

A complaint for support was filed by Donna Wachter naming the petitioner as the defendant in 1983. Blood tests were requested but the Appellant voluntarily and in writing acknowledged paternity and entered into an agreed support order for the child.

In May of 1986 the Appellant's petition to reopen the issue of paternity and his request for HLA blood studies were denied. Appellant then filed a motion for reconsideration of his petition requesting HLA testing. In the hearing on this motion the following colloquy ensued:

APPELLANT'S ATTORNEY: We are here, Your Honor, for reconsideration. We had filed to allow blood testing. This child was actually born in '83. There was an order for blood testing in 1984, and at that time the parties agreed not to have blood testing. And you heard testimony at the prior hearing from both parties at least from Mr. Ascero that this was something that was done, the mother of the child was saying to him why should you do this to me and to the child because in fact he had lived together with her during the early years that this child was born and he had grown to love the child, the child had grown to love him.

Our problem, Your Honor, is simply this: Mr. Ascero in fact still visits the child, he is paying support under the order. He would like to know, because the doubts that were raised by the mother on the one hand, by someone else who admitted being the father, he is even willing to agree that he would continue paying support, but he would like to know for sure that he is the father of this child. He feels that it would be helpful for the child and for himself, because this doubt having been brought to light, he would like to know, and that's why he wants the blood testing. And he would agree, as I say, to continue paying support even if it is determined that he is not or likely not to be the father of the child by virtue of the blood testing. So that he is here really because he would like to settle his mind ...

THE COURT: There is a great principle in the law that the Court does not order a futile act. And, of course, it

would appear that *the legal issues here are hammered and nailed down and cannot be subject to any reopening.* However, from a humanitarian standpoint I will order blood studies and we will give the woman some time to recover, it is noted by the Court that *they have no legal significance.* (N.T. at 2–4, December 8, 1986).

The court then ordered the testing with the stipulation on the order that the "Defendant agrees to pay support order regardless of out come [sic] of Blood test." (Order of 3/11/87, amending order of December 8, 1986).

The blood tests were performed and the results indicated that Appellant was excluded as the father of the child. Appellant then filed a petition to vacate the support order. The Appellant's petition was denied and this appeal was taken.

As the trial court noted above, the legal issues in this case are indeed "hammered and nailed down." The Appellant argues: (1) the acknowledgement of paternity is not a "knowing and intelligent" admission prior to HLA blood testing, and (2) the doctrines of equitable estoppel and/or res judicata do not bar him from attacking the finding of paternity in this case. We will consider the issues in reverse order.

It is well settled that an order for support of an illegitimate child necessarily determines the issue of paternity. Absent an appeal taken directly from the order, or the showing of fraud the aggrieved party is foreclosed from challenging this determination. The issue of paternity is established as a matter of law. *Shindel v. Leedom,* 350 Pa.Super. 274, 278, 504 A.2d 353, 355 (1986); *Commonwealth ex rel. Palchinski v. Palchinski,* 253 Pa.Super. 171, 174, 384 A.2d 1285, 1287 (1978). Furthermore, it was stated in *Commonwealth ex rel. Nedzwecky v. Nedzwecky,* 203 Pa.Super. 179, 182, 199 A.2d 490, 491 (1964), that paternity is a relevant fact necessarily determined and established by the entry of a support order, and therefore, under the doctrine of res judicata, the aggrieved party to a support order may not later challenge that fact in a subsequent proceeding.

In this case, the issue of paternity was decided in 1984 when Mr. Ascero chose to enter into the support order and did not appeal that order. Furthermore, Appellant has never alleged fraud in relation to that order. Therefore, the issue of paternity is res judicata and cannot be challenged on this appeal.

■ Additionally, as in the similar case *Manze v. Manze*, 362 Pa.Super. 153, 523 A.2d 821 (1987), the decision to reject this petition may be justified under the doctrine of equitable estoppel. Under this doctrine, if the putative father has indicated by his conduct that the child is his own, he is estopped from denying paternity. Furthermore, this doctrine is compatible with this Court's findings that parental relationships can be established constructively and that such relationships and their concomitant duties merit judicial recognition and enforcement. *Id.; Chrzanowski v. Chrzanowski*, 325 Pa.Super. 298, 472 A.2d 1128 (1984). Our court has stated, "[T]he law cannot permit a party to renounce even an assumed duty of parentage when by doing so the innocent child would be victimized." *Commonwealth ex rel. Gonzalez v. Andreas*, 245 Pa.Super. 307, 312, 369 A.2d 416, 419 (1976).

In the instant case, Ascero lived with the child for two years and continued to visit the child after he moved out. He stated that he had grown to love the child, and would continue to visit him. He also represented to the lower court that he wanted the blood tests solely to satisfy his curiosity and for the sake of the child. For these reasons, he is now estopped from denying paternity and from denying his obligation to support the child. *Manze, supra*, at 362 Pa.Superior Ct. at 161, 523 A.2d at 825. Appellant's attempt to distinguish *Manze* from the facts in this case is misguided. The important fact is that Mr. Ascero held himself out as the father of the child, and acknowledged paternity in writing which was approved by court and entered as an order by the court. He then pledged that whatever the results of the HLA test, he would continue to pay support. The law is clear, and Appellant is thus equitably estopped from challenging the support order.

■ Next, appellant argues that his agreement to support the child and his acknowledgement of paternity did not constitute a voluntary and intelligent act because blood tests had not shown that he was, in fact, the father so he could not "know" he was the father when he acknowledged paternity. Appellant cites no case law for this proposition, and furthermore, when Appellant was given the opportunity to order blood tests, prior to entering into the support order, he chose not to exercise this right and instead acknowledged paternity. This argument is thus without merit.

■ Under 42 Pa.C.S.A. § 6133, the Uniform Act on Blood Tests to Determine Paternity, the court has the authority to order tests if "paternity, parentage or identity of a child is a relevant fact." In *Manze*, this court stated that where paternity has been established either by consent or order, paternity is not a relevant fact in a later proceeding. *Manze*, 362 Pa.Super. at 162, 523 A.2d at 825. Therefore, blood tests should not have been ordered in this case, even for humanitarian purposes, and should never be ordered unless it is to establish paternity in a proceeding where paternity is a relevant fact and has not already been determined in a prior proceeding.

Order affirmed. Jurisdiction relinquished.