**Michael A. KIT, Appellant,**

v.

**Richard A. MITCHELL, and March, Hurwitz, DeMarco & Mitchell and Cramp, D'Iorio, McConchie & Forbes, Appellee.**

Superior Court of Pennsylvania.

Argued Jan. 9, 2001.

Filed March 27, 2001.

Reargument Denied May 30, 2001.

---

8. See trial court opinion page 15.

J. Michael Farrell, Philadelphia, for appellant.

Gary A. Hurwitz, Media, for appellee.

Before STEVENS, MONTEMURO * and BECK, JJ.

MONTEMURO, J.:

¶ 1 Appellant, Michael A. Kit, appeals from an order granting judgment *non obstante veredicto* (JNOV) entered by the Court of Common Pleas of Delaware County in favor of Appellees, Richard A. Mitchell, Esquire, and the law firms of March, Hurwitz, DeMarco & Mitchell and Cramp, D'Iorio, McConchie & Forbes, P.C., following a trial in which a jury awarded Appellant $100,000. For the reasons set forth below, we affirm.

¶ 2 The testimony presented at trial established the following complex history of this case. Appellant and Patricia Ritaco (now Patricia Divine) married in 1982 after a four-year courtship. Although the couple had difficulty conceiving a child, apparently because of Appellant's low sperm count, Patricia became pregnant in 1985. On March 19, 1986, Patricia gave birth to a son, named Michael Kit, Jr. after Appellant who was listed as the father on the child's birth certificate.

¶ 3 The couple was experiencing marital problems at the time of Michael Jr.'s conception and birth. In fact, Patricia was engaged in an extramarital affair with one John Devine, whom she believed to be the child's biological father. Nevertheless, Appellant and Patricia remained married and lived together during the conception, pregnancy and birth of the child. Unknown to Appellant, however, Patricia arranged for blood tests to be performed on herself, Mr. Devine, and Michael Jr. to determine the paternity of her son. A report dated February 2, 1987, indicated a 99.077% probability that Mr. Devine was the father.

¶ 4 On February 11, 1987, Patricia initiated an action for divorce. The parties' agreement that Appellant would pay $75 a week in child support was entered as a court order on April 7, 1987. At no time prior to the filing of the order did Appellant challenge the paternity of Michael Jr. Rather, for two months following commencement of the divorce action Appellant regularly visited Michael Jr. until Patricia terminated access, at which time she advised Appellant that he was not the child's father. Thereafter, statements were made to Appellant by Patricia and members of her family that Michael Jr. was not his biological son.

¶ 5 In August 1987, based on these statements, Appellant filed a petition to vacate the support order and requested the court to order blood tests to determine the paternity of Michael Jr. A master's hearing on Appellant's petition resulted in the recommendation that all parties submit to the testing. Thereafter, Patricia retained Appellee, Richard A. Mitchell, Esq., to represent her interests in the domestic relations action. It was disputed at trial whether Appellee had received a copy of the 1987 blood test results during this

* Retired Justice assigned to Superior Court.

initial meeting, if ever. Patricia testified that the document had been placed by her previous attorney in a case file which she personally delivered to Appellee. Appellee testified, however, that he was unaware of the blood test or its results until 1992 when he was advised of their existence by Appellant's counsel. Nevertheless, it was undisputed that Patricia told Appellee of her disclosure to Appellant, prior to the 1987 support order, that he was not the biological father of Michael Jr.

¶ 6 On Patricia's behalf, Appellee petitioned the court for a *de novo* hearing on Appellant's petition to vacate the 1987 support award and order blood tests. At the January 26, 1989 hearing, Appellee relied on the doctrines of parentage by estoppel and *res judicata* to assert that blood tests would be irrelevant because Appellant had agreed to the 1987 support order without challenging paternity. Based on Appellee's argument, the trial court denied Appellant's petition, and this Court affirmed. *Kit v. Kit*, No.1941 PHL 1989, unpublished memorandum (Pa.Super. filed March 30, 1990).[1] At no time during the proceedings was the existence of the 1987 blood test report ever mentioned.

¶ 7 Throughout the litigation, Appellant failed to satisfy his support obligations, and Patricia repeatedly notified domestic relations officers of Appellant's non-compliance. On March 17, 1989, Appellee filed a petition for contempt against Appellant because of the arrearages in support payments to Patricia. Despite court admonition to obey the support order within 30 days or risk imprisonment, Appellant remained non-compliant and was arrested and incarcerated on June 28, 1990. While in prison, Appellant offered Patricia $1,000 to settle the support dispute. Against Ap-

pellee's advice, Patricia declined the settlement offer, and Appellant remained incarcerated for 60 days.

¶ 8 After his release, Appellant petitioned the court for partial custody of Michael Jr. Patricia objected based on Appellant's fitness as a parent. Eventually, an evaluator was appointed to interview the parties and recommend a custody arrangement to the court. During an interview in 1992, Mr. Devine, who had by then married Patricia and wished to adopt Michael Jr., submitted the 1987 blood test report to the evaluator. Shortly thereafter, the existence and substance of the report were revealed to Appellant. Further blood tests were conducted, and Appellant was definitively excluded as the biological father of Michael Jr.

¶ 9 Knowing conclusively that he was not the biological father of Michael Jr., and that Patricia and Mr. Devine had possessed this information since 1987, Appellant petitioned the court to vacate the 1987 support order on the basis that the underlying support agreement was the product of fraud. On April 26, 1996, the court granted the petition and ordered Patricia to remit $26,025, the amount of the payments made by Appellant to her under the vacated support order and subsequent property settlement. This Court affirmed the order on direct appeal by Appellant who claimed the lower court erred by not also granting attorney's fees. *Kit v. Devine*, No. 01899 Philadelphia 1996, unpublished memorandum (Pa.Super. filed January 29, 1997). Patricia initially filed a cross-appeal from the order; however, we dismissed her appeal because she failed to file a brief. *Id.* at 3 n. 2. In June of 1996, prior to implementation of this Court's decision which remanded for further pro-

---

1. We held that Appellant was precluded from denying paternity because his low sperm count gave him reason to question whether he was Michael Jr.'s father prior to entering into the support agreement. *Id.* at 425, 590 A.2d 1303.

ceedings as to the amount of attorney fees owed, Patricia and Mr. Devine declared bankruptcy, staying indefinitely any return of funds to Appellant.

¶ 10 On November 27, 1996, Appellant initiated the instant action averring, *inter alia*, that Appellee had, in the scope of his employment with Appellee law firms, committed fraud and made wrongful use of civil proceedings in his representation of Patricia in the domestic relations dispute. At trial, the jury found that Appellant had failed to prove fraud, but awarded him $100,000 for wrongful use of civil proceedings. Upon consideration of post trial motions, the trial court granted Appellees' motion for JNOV, reasoning that because the jury did not find that Appellee committed fraud in failing to disclose his knowledge of the 1987 blood test report, it could not reasonably have found that he committed a wrongful use of civil proceedings. (Trial Ct. Op., 3/3/00, at 14–15). This appeal followed, in which Appellant claims that: (1) the trial court erred by granting JNOV based on the inconsistency of the verdicts; and (2) the trial court erred in determining that the evidence presented at trial, when viewed in the light most favorable to him as the verdict winner, was insufficient to establish that Appellee had wrongfully used civil proceedings.[2]

¶ 11 Our review of a trial court's order granting JNOV is limited to determining whether the trial court abused its discretion or committed an error of law that controlled the outcome of the case. *Campo v. St. Luke's Hospital,* 755 A.2d 20, 23 (Pa.Super.2000). Our Supreme Court summarized the relevant considerations regarding the grant of JNOV as follows:

In reviewing a motion for judgment n.o.v., the evidence must be considered in the light most favorable to the verdict winner, and he must be given the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in his favor. Moreover, [a] judgment n.o.v. should only be entered in a clear case and any doubts must be resolved in favor of the verdict winner. Further, a judge's appraisement of evidence is not to be based on how he would have voted had he been a member of the jury, but on the facts as they come through the sieve of the jury's deliberations. There are two bases upon which a judgment n.o.v. can be entered: one, the movant is entitled to judgment as a matter of law, and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first a court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

*Moure v. Raeuchle,* 529 Pa. 394, 604 A.2d 1003, 1007 (1992) (citations and quotation marks omitted). With these principles in mind, we turn to the issues Appellant presents to this Court.

¶ 12 First, Appellant argues that the trial court committed an error of law by granting JNOV based on the inconsistency of the verdicts. "It is established law in Pennsylvania that there is a presumption of consistency with respect to a

---

**2.** Appellees' contention that Appellant's claim was barred by the statute of limitations is waived because of Appellees' failure to raise

the issue in a cross-appeal. *See, e.g., Sateach v. Beaver Meadows Zoning Hearing Board,* 676 A.2d 747, 751 (Pa.Commw.1996).

jury's findings which can only be defeated when there is no reasonable theory to support the jury's verdict." *Curran v. Greate Bay Hotel and Casino,* 434 Pa.Super. 368, 643 A.2d 687, 688 (1994), *appeal denied, Curran v. Eastern Engineering and Elevator Co.,* 539 Pa. 678, 652 A.2d 1323 (1994) (quoting *Giovanetti v. Johns–Manville Corp.,* 372 Pa.Super. 431, 539 A.2d 871, 875 (1988)). Thus, the issue becomes whether any reasonable theory exists to support the jury's finding that Appellant failed to prove fraud, but succeeded in proving wrongful use of civil proceedings.

■ ¶ 13 Wrongful use of civil proceedings "is a tort which arises when a party institutes a lawsuit with a malicious motive and lacking probable cause." *Ludmer v. Nernberg,* 433 Pa.Super. 316, 640 A.2d 939, 942 (1994), *appeal denied,* 541 Pa. 652, 664 A.2d 542 (1995), *cert. denied, Nernberg v. Ludmer,* 517 U.S. 1220, 116 S.Ct. 1849, 134 L.Ed.2d 950 (1996) (quoting *Rosen v. Bank of Rolla,* 426 Pa.Super. 376, 627 A.2d 190, 191 (1993)). The elements of the tort are set forth at 42 Pa. C.S.A. § 8351.[3] Additionally, the Legislature has delineated five factors that a plaintiff must show to succeed in the action: (1) the defendant has procured, initiated or continued the civil proceedings against him; (2) the proceedings were terminated in his favor; (3) the defendant did not have probable cause for his action; (4)

the primary purpose for which the proceedings were brought was not that of securing the proper discovery, joinder of parties or adjudication of the claim on which the proceedings were based; and (5) the plaintiff has suffered damages. 42 Pa. C.S.A. § 8354. These elements must be proven by a preponderance of the evidence. *Mi–Lor, Inc. v. DiPentino,* 439 Pa.Super. 636, 654 A.2d 1156, 1158 (1995).

■ ¶ 14 To succeed in a fraud case, a plaintiff must establish the following elements, none of which are equivalent to the elements of wrongful use of civil proceedings: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Gruenwald v. Advanced Computer* 730 A.2d 1004, 1014 (Pa.Super.1999) (citing *Gibbs v. Ernst,* 538 Pa. 193, 647 A.2d 882, 889 (1994)). These elements must be proven by clear and convincing evidence. *Sewak v. Lockhart,* 699 A.2d 755, 759 (Pa.Super.1997).[4]

■ ¶ 15 In sum, the torts differ in two important ways. First, because fraud is not an element of wrongful use of civil proceedings, a plaintiff can make out a wrongful use of civil proceedings claim

---

3. **§ 8351. Wrongful use of civil proceedings**

 (a) Elements of action.—A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings:

 (1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based;

 (2) The proceedings have terminated in favor of the person against whom they are brought.

 (b) Arrest or seizure of person or property not required.—The arrest or seizure of the person or property of the plaintiff shall not be a necessary element for an action brought pursuant to this subchapter.

4. It is undisputed that the trial court properly instructed the jury on the elements of the two causes of action and their respective burdens of proof. (N.T., 8/4/98, at 17–35).

without proving fraud on the part of the defendant. Second, preponderance of the evidence is a lower standard of proof than clear and convincing evidence. Thus, in theory, a jury could reasonably find that a defendant did not act fraudulently, but nevertheless wrongfully used civil proceedings. Such verdicts are not inherently inconsistent.

¶ 16 Having recognized that the verdicts could be theoretically consistent, we note that the trial court's conclusion was based not on an analysis of the statutory provisions *per se,* but on the logical incongruity of the two elements of the verdict given the unique factual situation here. The trial court stated in its Opinion:

It is, therefore, fair to conclude that this jury, in returning its verdict in favor of [Appellee] on the issue of fraudulent non-disclosure of the 1987 blood test results, concluded that [Appellant] failed to meet his burden of proof and demonstrate:

1. That [Appellee] failed to exercise reasonable care with regard to disclosing the existence of the 1987 blood test results at or after the time this information may have come into his possession;

2. That [Appellee]'s words or conduct, alleged not to be in accord with the applicable facts, intentionally were designed to mislead [Appellant] as to the existence of the blood test report;

3. That the 1987 blood test report was material, *i.e.*[,] would have been of importance to a reasonable person's consideration in making a decision in the support action;

4. That failure to disclose the 1987 blood test report was done with knowledge that [Appellant] was likely to regard it as important, even

though a reasonable person would not regard it as important;

5. That [Appellant] relied upon the misrepresentation or misleading representation as to the 1987 blood test report as true, and that [Appellant] would not have acted as he did unless he considered that misrepresentation or misleading representation to be true;

6. That [Appellee] knew he was making or subsequently learned he had made a misleading representation, and knew or subsequently learned that [Appellant] was about to act in reliance upon it;

7. That [Appellee] had adopted or participated in the fraudulent actions, misrepresentation or non-disclosure of his client, [Appellant]'s former wife, knowing them to be fraudulent or misrepresentative[; and]

8. That Appellant had suffered a loss as a consequence of [Appellee]'s misrepresentation or misleading representation regarding the 1987 blood test results.

(Trial Ct. Op., 3/3/00, at 14–15).

¶ 17 Although, as already noted, the differing elements and standards of proof required to demonstrate the two torts alleged in this case theoretically vitiate the trial court's rationale of inconsistent verdicts, we accept the logical imperative implicit in the finding of inconsistency. We thus conclude that under the facts of this case, the JNOV was justified by the conflicting jury verdicts.

¶ 18 However, even if the verdicts were factually consistent, the trial court's grant of JNOV was still proper as Appellant failed to satisfy his statutory burden of proof that Appellee wrongfully used civil proceedings, specifically that Appellee acted with gross negligence or without probable cause. Appellant has consistently theorized that Appellee acted without probable cause or with gross negligence in

his representation of Patricia either because he knew that Appellant was not the biological father of Michael Jr., or because he knew that the 1987 support order was the product of fraud and would, on that basis, eventually be vacated.

¶ 19 Viewing the evidence in the light most favorable to Appellant, as we must, we credit Patricia's testimony and infer therefrom that Appellee received a copy of the 1987 blood report when the representation commenced. (N.T., 7/30/98, at 150–51; N.T., 7/31/98, at 13).

¶ 20 Despite this stricture, Appellant's first theory of the wrongful use of civil proceedings case fails as a matter of law because Appellee did in fact have probable cause to pursue the claim despite his knowledge of the 1987 blood test report. The wrongful use of process statute provides that a person has probable cause to bring an action, if he or she "reasonably believes in the existence of the facts upon which the claim is based," and either

(1) Reasonably believes that under those facts the claim may be valid under the existing or developing law;

(2) Believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information; or

(3) Believes as an attorney of record, in good faith that his procurement, initiation or continuation of a civil cause is not intended to merely harass or maliciously injure the opposite party.

42 Pa.C.S.A. § 8352; *Bannar v. Miller*, 701 A.2d 242, 248 (Pa.Super.1997), *appeal denied*, 555 Pa. 706, 723 A.2d 1024 (1998). Moreover, the clear language of section 8351 permits a cause of action to be based on either gross negligence or lack of probable cause. *Bannar, supra* at 249 (citing 42 Pa.C.S.A. § 8351). To determine if Appellee acted without probable cause or with gross negligence in the underlying matter, we must examine the facts and the law as it existed in the years 1987–92 regarding the presumption of legitimacy, parentage by estoppel, and the doctrine of *res judicata*. *See, e.g., Broadwater v. Sentner* 725 A.2d 779, 783 (Pa.Super.1999), *appeal denied*, 562 Pa. 664, 753 A.2d 814 (2000).[5]

¶ 21 Appellee, as attorney for Patricia, was presented with the following facts: (1) Appellant and Patricia were married and living together at the time of Michael Jr.'s conception and birth; (2) Appellant was listed as the child's father on the birth certificate and held himself out to the public as such for over a year; (3) Appellant agreed to an order to pay support for the boy without challenging paternity; and (4) a blood test of which Appellant was unaware conclusively showed that Appellant did not father Michael Jr. Additionally, based on his client's representations, Appellee believed that Appellant should at least have suspected that he was not the biological father prior to entering in to the support agreement. Given those facts, as a matter of law, Appellee could reasonably believe that a valid basis existed on which to seek enforcement of the 1987 support order.

¶ 22 Approximately four months prior to Appellee's engagement as Patricia's attorney, this Court published *Manze v. Manze,* 362 Pa.Super. 153, 523 A.2d 821, 822 (1987). There, a presumptive father petitioned the trial court to terminate his support obligations based on blood test results demonstrating that he was not the natural

---

5. We are assuming, *arguendo*, that the actions taken by Appellee constitute a "procurement, initiation, or continuation of civil proceedings." 42 Pa.C.S.A. § 8351(a).

father. The child in *Manze* was born during the marriage of the appellant and the mother, and the appellant held himself out as the child's father for ten years thereafter. Additionally, when the parties separated, the appellant agreed to a support order which he later challenged after blood tests excluded him as the biological father, and he learned that he was in fact incapable of fathering a child. Despite the fact that the appellant was not the biological father, we held that the appellant was precluded from denying paternity based on the doctrines of *res judicata* and equitable estoppel. *Id.* at 822–25.

¶ 23 Given the factual similarities between the instant case and *Manze*, Appellee had probable cause to seek enforcement of the 1987 support order on Patricia's behalf. Because Michael Jr. was born during Appellant's marriage to Patricia, Appellant held himself out to the public as Michael Jr.'s father for over a year after the child's birth, and Appellant agreed to a support order without questioning paternity, Appellee's actions were justified under then-existing case law.

 ¶ 24 Appellant's second theory of the case, that Appellee knew the 1987 support order had been obtained through fraud and thus acted without probable cause or with gross negligence in enforcing it, was not supported by the facts presented at trial. Appellant correctly asserts that a support order may be vacated if the court finds it to have been the product of fraud. *See R.J.K. v. B.L.*, 279 Pa.Super. 71, 420 A.2d 749, 751 (1980); *Manze, supra* at 825 n. 7. Apparently, that is what occurred in the underlying case.[6] However, Patricia's fraudulent conduct in obtaining Appellant's agreement to pay support does

not, by itself, confer liability on Appellee for wrongful use of civil proceedings in seeking to enforce the contract. Rather, our inquiry is whether Appellee knew, or through reasonable investigation should have known, that the 1987 support order was generated through fraud so as to invalidate any probable cause he might have had to enforce the order.

 ¶ 25 Appellant relies on *Gentzler v. Atlee*, 443 Pa.Super. 128, 660 A.2d 1378 (1995), *appeal denied*, 543 Pa. 694, 670 A.2d 142 (1995), to support his claim that Appellee acted without probable cause or with gross negligence because the underlying support order was obtained through fraud. In *Gentzler* we reversed a trial court's grant of preliminary objections in the nature of a demurrer where it was alleged that a defendant attorney filed the underlying lawsuit with full knowledge that several factual inaccuracies were averred in the complaint. We noted that the records containing the correct facts were available to the attorney prior to the filing of the underlying action. *Id.* at 1384, *see also Bannar, supra* at 246 (attorneys held liable for drafting complaint which was directly contrary to known facts gained through past representation of clients). However, "[t]he law is well established that 'an attorney is entitled to rely in good faith upon the statement of facts made to him by his client, and is not under a duty to institute an inquiry for the purpose of verifying his statement before giving advice thereon.'" *Meiksin v. Howard Hanna Co., Inc.*, 404 Pa.Super. 417, 590 A.2d 1303, 1306 (1991) (quoting 52 Am. Jur.2d Malicious Prosecution § 64 (1970)).

¶ 26 Thus, even if Appellee knew that a blood test had been conducted to deter-

---

6. The April 10, 1996 Order and Opinion of the Honorable Patricia Hedley Jenkins vacating the support order on the basis of Patricia's fraudulent conduct was not admitted at trial nor was it included in the certified record to this Court. Therefore, we do not know which of Patricia's actions in the underlying case was found to have been fraudulent.

mine the paternity of Michael Jr., a jury could not reasonably conclude from the evidence of record that Appellee knew or should have known that the support order was the product of fraud. Indeed, the enforcement petition was not filed on Patricia's behalf until two months after the trial court ruled that blood tests would be irrelevant based on parentage by estoppel and *res judicata*. Moreover, no judicial finding of fraudulent inducement in the support agreement was made until 1996.

¶ 27 The jury's rejection of the fraud count meant that Appellant failed to produce clear and convincing evidence of fraudulent conduct by Appellee. Indeed, Appellee and Patricia both testified that she had advised Appellee of her disclosure to Appellant that the child was not his prior to his agreeing to pay support. There were no means available for Appellee to ascertain independently that the representations made to him by his client were untrue. Moreover, even if such means existed, Appellee was under no legal duty to confirm Patricia's story. Finally, Appellee began representing Patricia after the fraud occurred; thus he cannot be charged with responsibility for her fraudulent and reprehensible behavior prior to his involvement in the matter.

¶ 28 Consequently, we affirm the order of the trial court granting JNOV.

¶ 29 Order affirmed.