Dana CARTER, Appellant

v.

Ronald MORRISSON, Grievance Coordinator sued in his individual and official capacities; Manny Arroyo, former Director, sued in his individual and official capacities; Bernon Lane, Director, sued in her individual and official capacities; Pamela Brown, former Unit Manager sued in her individual and official capacities; Lenora King, Counselor sued in her individual and official capacities; Lauren Troppauer, Counselor sued in her individual and official capacities; Junius Russell, former Operations Counselor sued in his individual and official capacities; Paul O. Connor, Community Corrections Director sued in his individual and official capacities; Jose Alvarado, Parole Agent sued in his individual and official capacities; Elda Casillas, Parole Supervisor sued in her individual and official capacities; Freddie Harris, Parole Agent sued in his individual and official capacities; Community Education Centers; Monique Rogers, Employee at Community Education Centers sued in her individual and official capacities; Thomas Costa, District Director, PA Board of Probation and Parole sued in his individual and official capacities; Dale Evans, Employee of Community Education Centers sued in his individual and official capacities; Willie Jones, District Director of PA Board of Probation and Parole sued in his individual and official capacities; Lawrence Murray; Lauren Taylor; Mark Carey;

Julie Stowitzky; Thomas Pekar; Jeffrey Beard; Evans Gary; Nicole Johnson, Unit Manager sued in her individual and official capacities.

No. 10–1935.

United States Court of Appeals,
Third Circuit.

Submitted Pursuant to Third Circuit
LAR 34.1(a) April 1, 2011.

Opinion filed: May 26, 2011.

Dana M. Carter, Philadelphia, PA, pro se.

Sheryl L. Brown, Esq., Carla P. Maresca, Esq., Patricia McEnteer, Esq., Deasey, Mahoney, Valentini & North, Beth A. Smith, Esq., Claudia M. Tesoro, Esq., Office of Attorney General of Pennsylvania, Philadelphia, PA, for Defendants–Appellees.

Before: AMBRO, HARDIMAN and STAPLETON, Circuit Judges.

OPINION

PER CURIAM.

*Pro se* appellant, Dana Carter, appeals from the order of the United States District Court for the Eastern District of Pennsylvania entering judgment in favor of appellees and dismissing his complaint. For the reasons that follow, we will affirm the District Court's judgment.

Since the facts underlying the instant appeal are well-known to the parties, only a brief summary of the relevant events is provided here. Carter initiated the underlying action pursuant to 42 U.S.C. § 1983 against numerous defendants in July 2006. He alleged various civil rights violations stemming from his parole and placement in the Joseph E. Coleman Center ("Coleman Center"), a community corrections center where he served a portion of his Pennsylvania state conviction. Additional defendants were added in January 2007, after Carter was permitted to file an amended complaint. Nineteen of the defendants thereafter filed motions to dismiss. In a Memorandum Opinion and Order entered on November 30, 2007, the District Court granted in part and denied in part the defendants' motions to dismiss.

Because Carter does not challenge the District Court's November 30th ruling in any respect, we focus our factual recitation on those claims and parties which remained in the action after entry of that order. Two groups of defendants remained in the action. The first group—referred to as the Commonwealth Defendants—consists of Parole Agent Jose Alvarado and Parole Supervisor Elda Casillas of the Pennsylvania Board of Probation and Parole. With respect to these two defendants, surviving the motion to dismiss were Carter's First Amendment retaliation and Fourteenth Amendment Equal Protection claims, as well as his conspiracy claim filed pursuant to 42

U.S.C. § 1985(3). The second group—referred to as the CEC Defendants—was made up of employees Morrison, Arroyo, Lane, Troppauer, King, Russell, Brown, Johnson, and the corporate entity of the Coleman Center, Community Education Center, Inc. In addition to the retaliation, equal protection and conspiracy claims, the bulk of Carter's state law claims survived the CEC Defendants' motion to dismiss. In particular, the District Court allowed Carter to pursue his state law claims for breach of duty, abuse of authority and process, false arrest and imprisonment, intentional infliction of mental and emotional distress, and conversion.

At the close of discovery, both sets of defendants filed motions for summary judgment which were granted by the District Court in a Memorandum Opinion and Order entered on March 1, 2010. As summarized by the District Court, Carter alleged that the Commonwealth Defendants and CEC Defendants Morrison, Arroyo, Lane, Troppauer, King, Russell, and Brown retaliated against him for his propensity to file grievances by arresting him for parole violations on three separate occasions, forcing him to restart the Coleman Center program from phase one after his first parole violation, denying his home plans (i.e., a proposal for a living arrangement outside the Coleman Center), and interfering with his job search. In analyzing Carter's First Amendment retaliation claim under our decision in *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir.2003), the District Court concluded that he had indeed engaged in constitutionally protected conduct when he filed multiple requests and grievance forms regarding conditions at the Coleman Center, and even when he wrote to his local government representatives with these same concerns. The District Court further determined that Carter may have experienced "sufficiently adverse action" by the named defendants when he

was, *inter alia*, arrested and subsequently placed in punitive confinement. *See* D. Ct. Mem. Op. at 22, *citing Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir.2000).

According to the District Court, however, Carter failed to produce sufficient evidence to demonstrate a causal link between the exercise of his constitutional rights and the adverse actions taken. Carter's first parole violation resulted from his having been "unsatisfactorily" discharged from the Coleman Center for a program rule violation after it was discovered that his address book contained sensitive identification information in the form of names, dates of birth, personal cellular phone numbers, social security numbers, drivers' license numbers, and credit card numbers of four individuals. The court found that the allegation of a retaliatory motive was refuted by the absence of any evidence that Carter's grievances served as a "substantial or motivating factor" in his arrest, together with the existence of a legitimate, non-retaliatory rationale for that arrest (i.e., Carter's initial admission to the possession of prohibited sensitive identification information).

No retaliatory motive was found to have factored into Carter's re-entry into the Coleman Center at phase one of its rehabilitation program either. Despite the fact that Carter had progressed to phase three of the program before his violation of parole, he acknowledged in his deposition that the Coleman Center program rules direct all "new residents" to begin at the orientation stage. Carter's claim that his home plan was denied out of retaliation for his having filed numerous grievances fared no better. The District Court concluded that the CEC and Commonwealth Defendants denied Carter's home plan simply because it failed to meet the minimum requirements of an acceptable living arrangement.

With respect to Carter's second parole violation, the District Court noted that Carter failed to submit any evidence which would allow it to conclude that the supporting charges were false or that a retaliatory motive was a substantial factor in the defendants' actions in arresting him. In fact, as noted by the District Court, Carter pleaded guilty to the multiple infractions (i.e., failure to comply with certain fiscal and cell phone procedures, failure to maintain accountability when outside the facility, and deviation or unauthorized absence from work assignment, treatment or the facility) which ultimately resulted in his unsatisfactory discharge from the Coleman Center a second time. The District Court concluded that Carter's acceptance of responsibility served as strong evidence that the charges were legitimate and non-retaliatory.

Carter's third and final parole violation while at the Coleman Center resulted from what Carter asserts was retaliation on the part of CEC Defendant Russell, against whom he had filed a grievance on January 9, 2006, after Russell performed an "overly intrusive" pat-down search. The "Special Report" and "Demerit Report" filed by Defendant Russell at 7:35 a.m. the next day, however, cited Carter for threatening him with bodily harm during the course of the pat-down. While recognizing a dispute between the parties as to what was said during the pat-down search, the District Court found that Carter failed to demonstrate a sufficient causal connection between his filing of a grievance and Defendant Russell's reporting of the alleged verbal threat. Of particular significance to the District Court's determination was the fact that the parties' grievances were filed in such close succession that their timing countered any suggestion of a causal link. Absent any evidence from Carter that the grievance counselor ever retrieved Carter's grievance from the "grievance box" prior to Defendant Russell's filing of his reports, or that the counselor at least informed Russell of the grievance, the District Court concluded that there was a complete absence of evidence regarding a potentially retaliatory motive on the part of Defendant Russell in filing the reports that ultimately resulted in Carter's permanent removal from the Coleman Center.

Moreover, the District Court found that, even if Carter were able to demonstrate that his filing of grievances was a substantial and motivating factor in any of the adverse actions taken against him, the CEC and Commonwealth Defendants proved by a preponderance of the evidence—having submitted "appreciable amounts" of evidence demonstrating Carter's program violations—that the adverse actions were reasonably related to the legitimate penological interests of enforcing parole conditions and community corrections' regulations. *See* D. Ct. Mem. Op. at 32, *citing Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir.2002). The District Court thus determined that summary judgment was warranted in favor of the CEC and Commonwealth Defendants on Carter's First Amendment retaliation claims.

The District Court disposed of Carter's contention that the Commonwealth Defendants and CEC Defendants Morrison, Arroyo, Lane, Troppauer, King, Russell and Brown arrested him on parole violations and generally treated him unfairly as the result of racial animus with little discussion. The District Court noted the mere fact that prison officials are of a different race than a prisoner does not support an inference of discriminatory intent, nor does the simple observation that a disciplinary unit's population consists of more African–American residents than Hispanic or Caucasian residents at a particular time. Carter's conclusory allegations as to

the defendants' discriminatory intent was thus determined by the District Court to be insufficient to withstand summary judgment.

The District Court likewise readily disposed of Carter's claim brought pursuant to 42 U.S.C. § 1985(3), alleging that defendants conspired to retaliate against him for his assertion of his constitutional rights, to deny him equal protection, to arrest and imprison him for parole violations, and to prolong his stay at the Coleman Center by interfering with his program progression. According to the District Court, Carter simply failed to present sufficient evidence of defendants' alleged conspiratorial motive and intent to deny him the equal protection of the laws. Once again the District Court found defendants' evidence sufficient to demonstrate that the adverse actions they had taken against Carter were based on legitimate charges that he had violated the conditions of his parole while residing at the Coleman Center.

With respect to his state law claims, Carter conceded that the CEC Defendants were immune from a damage suit for his conversion and intentional infliction of emotional distress claims. Carter's remaining state law claims were deemed abandoned by the District Court given his failure to argue the merits of his various claims in response to the defendants' motions for summary judgment. Given the foregoing analysis, the District Court entered judgment in favor of the CEC and Commonwealth Defendants. This timely appeal followed.

We have jurisdiction pursuant to 28 U.S.C. § 1291. Our review of the District Court's grant of summary judgment is plenary and we must affirm if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A genuine issue of material fact is one that could change the outcome of the litigation. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

As noted previously, Carter seeks only to challenge the District Court's entry of summary judgment in favor of the Commonwealth Defendants and CEC Defendants.[1] Even with respect to that determination, Carter's appellate arguments are very limited. Carter charges the District Court with erroneous fact finding. In particular, Carter asserts that, contrary to the District Court's finding that the sensitive identification information found in his address book belonged to one Coleman Center staff member and three Coleman Center parolees, the individuals identified in his address book were in no way connected with the Coleman Center, but were instead four LP Group workers. Carter continues by arguing that the possession of identifi-

---

1. An appellant is "required to set forth the issues raised on appeal and to present an argument in support of those issues in [his] opening brief." *Kost v. Kozakiewicz,* 1 F.3d 176, 182 (3d Cir.1993); *see* Fed. R.App. P. 28(a)(5), (9). "It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal." *United States v. Pelullo,*

399 F.3d 197, 222 (3d Cir.2005). The instant appeal presents no circumstances which counsel against application of that rule. *See, e.g., Timson v. Sampson,* 518 F.3d 870, 874 (11th Cir.2008) (per curiam) ("While we read briefs filed by *pro se* litigants liberally, issues not briefed on appeal by a *pro se* litigant are deemed abandoned." (internal citations omitted)).

cation information of an individual not associated with the Coleman Center "should never resemble 'confidential information' or material in Coleman Hall's possession," such that it could support a program rule violation prohibiting the "possession, use, removal of, or tampering with" such information.

■ We uphold the District Court's grant of summary judgment on this First Amendment retaliation claim without hesitation. In order to establish a prima facie case of retaliation, Carter "must show (1) constitutionally protected conduct, (2) an adverse action by prison officials 'sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights,' and (3) 'a causal link between the exercise of his constitutional rights and the adverse action taken against him.' " *Mitchell v. Horn*, 318 F.3d at 530, *quoting Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir.2001) (further citation omitted). We can find no fault with the District Court's determination that Carter failed to demonstrate a causal connection between his filing of grievances and his arrest and parole remand on the basis of a violation tied to his possession of personal identifying information for an improper purpose. Carter's mere contention that his parole violation is flawed insofar as the information recorded in his address book did not belong to anyone associated with the Coleman Center does little to demonstrate that the defendants' action in charging him was an act of retaliation, especially given Carter's own initial admission that he planned on "doing something illegal" with the information he had gathered.

■ The same holds true with respect to Carter's argument wherein he asserts that the District Court erred in concluding that he failed to demonstrate a sufficient causal connection between his filing of a grievance against CEC Defendant Russell

and Russell's filing of a Special Report and Demerit Report the next day. Carter contends that the Pennsylvania Department of Corrections ADM 801 Directive ("DC–ADM 801") mandates that corrections staff file a report about a prisoner's behavior the same day that the incident occurs, and that DC–ADM 801 is applicable to administration of the Coleman Center's policies. Since Russell's report was not filed until 7:35 a.m. the following day, Carter asserts that no penological purpose could have been served by a report filed in violation of DC–ADM 801. However, we fail to see how a possible technical problem with a corrections staff's report and the resulting parole violation could, in and of itself, morph an otherwise legitimate act into one demonstrating retaliatory motive. Without any evidence that the grievance coordinator retrieved Carter's grievance or alerted Russell that any such grievance had been filed prior to Russell's filing of his own reports, we cannot fault the District Court for concluding that the type of "suggestive temporal proximity" found relevant to causation in *Rauser*, 241 F.3d at 334, was not applicable on the facts presented in the instant case. This is especially so given the promptness required of officials in filing such reports that Carter himself has pointed out.

We have carefully considered Carter's claims regarding retaliation. We find the retaliation claims unpersuasive and lacking in record support, either for the reasons fully explained by the District Court or for the reasons explained by the Commonwealth Defendants and CEC Defendants. Based on the foregoing, we will affirm the District Court's judgment.