J-A05045-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| CAROLYN H. LANKARD AND ROBERT M. LANKARD, HUSBAND AND WIFE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellants | |
| v. | |
| LAUREL MOUNTAIN MIDSTREAM OPERATING, LLC | |
| Appellee | No. 1367 WDA 2016 |

Appeal from the Order Entered August 25, 2016
In the Court of Common Pleas of Greene County
Civil Division at No(s): A.D. 778-2013

BEFORE:  BENDER, P.J.E., SHOGAN, J., and MOULTON, J.

MEMORANDUM BY MOULTON, J.:                **FILED JUNE 12, 2017**

Carolyn H. and Robert M. Lankard ("the Lankards") appeal from the August 25, 2016 order of the Greene County Court of Common Pleas granting the motion for summary judgment filed by Laurel Mountain Midstream Operating, LLC ("Laurel Mountain").  We affirm.

The Lankards own a 15-acre property in Franklin Township, Greene County.  On March 27, 2014, the Lankards filed an amended complaint against Laurel Mountain alleging causes of action for:  (1) breach of contract; (2) ejectment; (3) trespass/continuing trespass; (4) private nuisance; (5) conversion; (6) fraudulent misrepresentation; and (7) a demand for equitable accounting.  The allegations stemmed from Laurel

Mountain's installation of a natural gas pipeline on a portion of the Lankards' property. In their amended complaint, the Lankards sought a preliminary injunction requiring Laurel Mountain to relocate the pipeline to the correct location on the property in accordance with an easement and a separate letter agreement ("SLA") entered into by the parties in 2011.

The trial court comprehensively set forth the factual and procedural history of this case in its order and opinion granting summary judgment, which we adopt and incorporate herein. **See** Trial Ct. Op., 8/25/16, at 1-9 (unpaginated).

On January 29, 2016, following discovery, Laurel Mountain filed a motion for summary judgment, to which the Lankards filed a response. The trial court heard argument on the motion on May 2, 2016. On August 25, 2016, the trial court granted Laurel Mountain's motion for summary judgment.[1] On September 19, 2016, the Lankards timely appealed to this Court.

On appeal, the Lankards raise the following issues:

1. Whether the trial court committed an error of law and/or abused its discretion by fundamentally misapplying the parol evidence rule and refusing to consider clear and convincing record evidence establishing the parties' contractual intent, formation and modification?

---

[1] In response to the Lankards' Pennsylvania Rule of Appellate Procedure 1925(b) statement of errors complained of on appeal, the trial court entered an order on October 11, 2016, adopting its August 25, 2016 opinion as its Rule 1925(a) opinion.

2. Whether the trial court committed an error of law and/or abused its discretion by relying upon void, and ambiguous, purported receipts and releases in entering summary judgment on all claims in favor of the alleged releasee?

3. Whether the trial court committed an error of law and/or abused its discretion by failing to correctly apply the required standard of review to resolve a motion for summary judgment?

4. Whether the trial court committed an error of law and/or abused its discretion by allowing the movant to benefit from its spoliation of evidence directly relevant to the central issues in this case, which by itself should have precluded the entry of summary judgment?

5. Whether the trial court committed an error of law and/or abused its discretion by dismissing a properly pled cause of action for ejectment to compel the removal of an intentionally installed encroaching pipeline and valve?

Lankards' Br. at 7-8 (suggested answers omitted).

Our standard of review of an order granting summary judgment is as follows:

[O]ur scope of review is plenary, and our standard of review is the same as that applied by the trial court. . . . [We] may reverse the entry of a summary judgment only [if we] find[] that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, we view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. As our inquiry involves solely questions of law, our review is *de novo*.

***Mull v. Ickes***, 994 A.2d 1137, 1139 (Pa.Super. 2010); ***see*** Pa.R.C.P. 1035.2.

Preliminarily, we find that the Lankards have waived their fifth issue, which challenges the trial court's dismissal of their ejectment action, by failing to raise it in their Rule 1925(b) statement.[2] The trial court dismissed the ejectment action in its June 9, 2014 order sustaining in part Laurel Mountain's preliminary objections to the amended complaint. In their Rule 1925(b) statement, the Lankards listed five separate issues, none of which challenged the June 9, 2014 order or the dismissal of the ejectment action. ***See*** Pa.R.A.P. 1925(b)(4)(ii) (requiring that appellant identify "with sufficient detail" each ruling or error he or she intends to challenge on appeal).[3] Because the Lankards failed to raise the ejectment claim in their Rule 1925(b) statement, it is waived.

_____

[2] We have reordered our discussion of the Lankards' issues for ease of disposition.

[3] In their reply brief, the Lankards argue that this claim is not waived because the introductory paragraph of their Rule 1925(b) statement averred that it "should be deemed to include every subsidiary issue raised with the Court, including, without limitation, the issues raised in opposition to [Laurel Mountain's] preliminary objections." 1925(b) Stmt. at 1. This vague, boilerplate language, however, is insufficient to preserve a claim for appellate review. ***See Commonwealth v. Proctor***, 156 A.3d 261, 267 (Pa.Super. 2017); Pa.R.A.P. 1925(b)(4)(ii).

In any event, even if the Lankards had properly preserved this issue in their Rule 1925(b) statement, we would still find it waived for their failure to develop it with pertinent legal argument. ***See Umbelina v. Adams***, 34 A.3d 151, 161 (Pa.Super. 2011) ("[W]here an appellate brief fails to provide
*(Footnote Continued Next Page)*

In their third issue, the Lankards contend that the trial court erroneously applied the applicable standard of review in ruling on Laurel Mountain's summary judgment motion. Specifically, they claim that "[t]he trial court incorrectly interpreted the record against the Lankards, the non-moving parties, and made fact-based and credibility assessments in favor of Laurel Mountain on a controlling issue in this case." Lankards' Br. at 60. We disagree.

The trial court began its legal analysis by setting forth the applicable standard of review for summary judgment motions. Trial Ct. Op., 8/25/16, at 9-10. After examining the language of the easement and the SLA, as well as "the lengthy and substantial record," the trial court determined that the Lankards could not establish that Laurel Mountain breached the agreements.

> After careful review of the file, oral arguments, and in viewing the evidence in the light most favorable to the non-moving party, the Court finds that the crux of the [Lankards'] averrments [sic] is that [Laurel Mountain] intentionally violated the Easement and the SLA, thus resulting in a breach of contract claim. This Court disagrees, and finds that [Laurel Mountain] did not breach said Contracts.

_(Footnote Continued)_ ————————————

any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.") (quoting **In re W.H.**, 25 A.3d 330, 339 (Pa.Super. 2011)); Pa.R.A.P. 2119(a). In their brief, the Lankards merely assert that their complaint "averred that Laurel Mountain intentionally installed the encroaching Pipeline and aboveground valve on their Property, and otherwise pled a justiciable cause of action for ejectment." Lankards' Br. at 67-68.

*Id.* at 13, 17. The trial court granted summary judgment because it found no genuine issues of material fact with regard to any of the Lankards' claims. Based on our review of the trial court's decision, we conclude that the trial court correctly applied the standard of review.

The trial court addressed each of the Lankards' three remaining properly preserved issues in its August 25, 2016 opinion. Based on our *de novo* review of the certified record, the parties' briefs and oral arguments, and the relevant law, we conclude that the trial court did not err in granting summary judgment in Laurel Mountain's favor. We reach this conclusion for the reasons stated in the trial court's cogent opinion, which we adopt and incorporate herein. *See* Trial Ct. Op., 8/25/16, at 10-20.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/12/2017

IN THE COURT OF COMMON PLEAS OF GREENE COUNTY, PENNSYLVANIA
CIVIL DIVISION

CAROLYN H. LANKARD, et al.,          )
                                     )
                  Plaintiffs,        )
                                     )
                                     )
        vs.                          )        778 A.D. 2013
                                     )
                                     )
LAUREL MOUNTAIN MIDSTREAM            )
OPERATING, LLC,                      )
                                     )
                  Defendant.         )

## ORDER AND OPINION

AND NOW, this __25__ day of August, 2016, the matter being before the Court on the Defendant's Motion for Summary Judgment, after Oral Argument on May 2, 2016, this Court makes the following findings:

## PROCEDURAL HISTORY

Carolyn H. Lankard (formerly Carolyn H. McNeely) filed a Writ of Summons on October 16, 2013, against Laurel Mountain Midstream (hereinafter "Defendant"). On February 21, 2014, Mrs. Lankard filed the Complaint adding Mr. Lankard as an additional Plaintiff to the action (hereinafter "Plaintiffs"). On March 27, 2014, Mrs. Lankard filed an Amended Complaint.

The Amended Complaint contained seven Causes of Action relating to the installation of a natural gas pipeline revolving around an Easement on Plaintiffs property. The seven Causes of Action were: (1) breach of contract, (2) ejectment, (3) trespass/continuing trespass, (4) private nuisance, (5) conversion, (6) fraud/misrepresentation, and (7) demand for equitable accounting.

April 11, 2014, the Defendant filed Preliminary Objections to the Plaintiffs Amended Complaint. On June 09, 2014, former President Judge Nalitz dismissed the Plaintiffs following claims: claim (2) ejectment, claim (4) private nuisance, and claim (7) equitable accounting. Therefore, only four counts remain for this Court's review.

On June 27, 2014, Defendant filed an Answer and New Matter to Plaintiffs Amended Complaint. August 5, 2014, the Defendant filed an Amended Answer and New Matter. On August 21, 2014, Plaintiffs filed a Reply to Amended New Matter. January 29, 2016, the Defendant filed a Motion for Summary Judgment, a Statement of Undisputed Facts in Support of its Motion for Summary Judgment, a Brief in Support of its Motion for Summary Judgment, and Exhibits in Support of its Motion for Summary Judgment.

On February 29, 2016, Plaintiffs filed a Response to Defendant's Statement of Undisputed Facts in Support of Motion for Summary Judgment, Enlarged Exhibits to Affidavit of John Dunn, and a Counterstatement of Supplemental Material Facts. March 18, 2016, the Defendant filed a Praecipe to Attach Affidavits in Support of Defendant's Motion for Summary Judgment.

On April 11, 2016, Plaintiffs filed Plaintiffs Brief in Support of Response in Opposition to Defendant's Motion for Summary Judgment. April 29, 2016, the Plaintiffs filed Plaintiffs Supplemental Brief in Support of Responses in Opposition to Defendant's Motion for Summary Judgment. On May 2, 2016, Plaintiffs filed Affidavit of Robert M. Lankard in Support of Response in Opposition to Defendant's Motion for Summary Judgment and Praecipe to Attach Affidavit in Support of Defendant's Motion for Summary Judgment on the Authentication of E-mails. On May 2, 2016, this Court heard Oral Arguments relating to Defendant's Motion for Summary Judgment.

May 6, 2016, the Defendant filed Reply Brief in Further Support of the Defendant's Motion for Summary Judgment. On May 9, 2016, Defendant filed Reply Brief in Further Support of Defendant's Motion for Summary Judgment and Praecipe to Attach Affidavit in Support of Defendant's Motion for Summary Judgment on the Authentication of E-mails.

## PROPERTY

The crux of this case revolves the interpretation of the Right of Way; an Easement and Seperate Letter Agreement (hereinafter "SLA") in relation to the installation of a Pipeline on the Eastern side of the Plaintiffs property. Whereas, Plaintiffs argue is unlawfully encroaching upon their property.

Mrs. Lankard acquired the subject property in 1991. In August of 2013, Plaintiffs were married. On January 24, 2014, a Deed was executed between Mr. and Mrs. Lankard whereby Mr. Lankard obtained interest in the subject property. However, Mr. Lankard is not a party to the Easement or SLA.

The property is hilly, contains approximately 15 acres and is vacant except for a small shed on the Western side. The property has a 1.5 acre, fenced in, dog run in the middle of the property near the Northern border. However, the property (in the mid-2000s) had a gravel driveway, water connection, septic tank, and leach bed installed on the Western side.

Mrs. Lankard has prior experience and knowledge within the oil and gas field. She entered into a lease, for the natural gas rights on the property with Atlas on August 9, 2010, and received royalty interest for the Atlas Lease. Mrs. Lankard also received royalty payments for at least two Marcellus natural wells drilled pursuant to the Atlas Lease. Then, Mrs. Lankard was paid for entering into another lease, to the same natural gas rights, by Chevron Appalachia, LLC (after Chevron acquired Atlas).

## PIPELINE NEGOTIATIONS

In May of 2011, Defendant (through Defendant's agent Kimberly Lively) approached Plaintiffs to negotiate an agreement for the installation of a Pipeline on the property. The negotiations hinged on the necessary Easement for installation. During negotiations, Plaintiffs stated their particular requirements. Specifically, perserving two large oak trees and other trees along the property line. Lively showed the Plaintiffs a sketch depicting the general route of the Right of Way and Easement. This sketch was signed by Mrs. Lankard, later attached to the Easement and SLA and was superseded by the "as-built drawing".

June 11, 2011, Plaintiffs, Lively and Mr. Smithee (Defendant's project manager for the Pipeline) met at the property and discussed the installation of the Pipeline. It was explainted that, at this point, the exact route of the Pipeline was unknown. Mrs. Lankard fully executed

the Easement and SLA on June 21, 2011. Mr. Lankard did not sign these documents because he did not have any property interests (this being prior to marriage).

On August 10, 2011, Defendant's Attorney-in-Fact (Clayton Harris) signed the Easement and SLA. August 23, 2011, the fully executed Easement was recorded in the Greene County Recorder of Deeds Office of Pennsylvania.

## PIPELINE CONSTRUCTION

In November of 2011, the Right of Way and Centerline of the Pipeline were surveyed and marked with stakes. In December of 2011, the Defendant paid Mrs. Lankard for its option rights under the Easement and SLA. She accepted payment and signed a Receipt and Release. It is noted that Defendant obtained all necessary permits for the construction of the Pipeline.

In late February of 2012, Mr. Lankard complained that the survey flags were outside of what he thought to be the workspace allotted. The Court finds relevant that on March 14, 2012, Mrs. Lankard agreed to and signed a "Receipt for Additional Work Space" and was paid $2,000 for granting such additional space. *Exhibit 44 to Defendant's Exhibits in Support of its Motion for Summary Judgment.*

The Easement and SLA contained terms releating to the necessary relocation of a dog run, including the need for two additional trees for the relocation. Therefore, Mrs. Lankard was paid pursuant to the additional terms within the SLA. She accepted payment and executed a Receipt and Release.

The Pipeline was installed on the Eastern part of the property (the opposite side of the property from the road). The Pipeline runs parallel to the wooded Eastern fence line and

makes a minor bend to go between two telephone poles. A valve with an enclosure was installed on the Southern end of the property. The Pipeline was completed around September of 2012. However, reclamation and restoration work continued into 2013.

The Affidavit of Easement, Right of Way Survey and the "as-built drawing" were dated November 12, 2014 and filed in February of 2015.

### SEPERATE LETTER AGREEMENT - UNSIGNED BY DEFENDANT

Plaintiffs allege that there is an additional, Unsigned Seperate Letter Agreement (hereinafter "Unsigned SLA") that ONLY Mrs. Lankard signed and therefore controls. Plaintiffs argue that this Unsigned SLA contained revised additional stipulations that were not contained in the fully executed SLA.

The Plaintiffs allege that Lively provided this Unsigned SLA to Mrs. Lankard, that Mrs. Lankard signed but did not date it, and she then returned said document to Lively. Plaintiffs do not remember when this document was received, but admit to never seeing Lively after June 21, 2011, and Mr. Lankard does not know if the Unsigned SLA is even the SLA that he thought was binding. *Dep. Tr. of Mr. Lankard at pgs. 415:11-25, 416, 422.* The Defendant states that the existence or recognization of this Unsigned SLA was unknown to them until July of 2013, and the Defendant never signed this document.

It is further noted that the Bold Type Language above the signature lines on this Unsigned SLA (as well as the signed SLA) states, "IT IS FURTHER UNDERSTOOD THAT THE TERMS OF THIS AGREEMENT ARE NOT BINDING UNTIL EXECUTED BY BOTH THE GRANTOR(S) AND THE GRANTEE." *Exhibit 21 to Defendant's Exhibits in*

*Support of its Motion for Summary Judgment.* Furthermore, Lively testified at a deposition that after Mrs. Lankard signed the SLA on June 21, 2011, she did not make changes to the SLA. *Dep. Tr. of Kimberly A. Lively at pg. 215:6-18, Exhibit 46 to Defendant's Exhibits in Support of its Motion for Summary Judgment.* Further, the Defendant did not sign the Unsigned SLA. *Exhibit 45 to Defendant's Exhibits in Support of its Motion for Summary Judgment.*

## PLAINTIFFS CAUSES OF ACTION

The remaining Causes of Action are: Breach of Contract, Trespass/Continuing Trespass, Conversion, and Fraud/Misrepresentation.

### BREACH OF CONTRACT

The Plaintiffs averr that the Defendant intentionally violated the Easement and the SLA. Specifically in dispute is the location of the Pipeline on the Plaintiffs property.

The Plaintiffs averr that said Pipeline was installed outside of the Easement. Specifically, that the pipeline is approximately 82 feet from the East Property line and failed to match the location provided to the Plaintiffs by a map of the Pipeline location.

The Plaintiffs averr that the aboveground valve, flange and enclosure were installed approximately 72 feet from the East Property line when they were not to be installed at all. Additionally, the Plaintiffs averr that the Defendant did not reclaim and restore the Plaintiffs property. Specifically, that the Defendant did not level the right-of-way nor remove the rock and other debris. The Plaintiffs averr that the Defendant failed to seed and fertilize the Plaintiffs land per the SLA.

The Plaintiffs averr that they were not compensated for the removal of locust trees from the property. Specifically, that the Defendant cut down at least 18 locust trees and removed these from the site, contrary to the Easement and SLA. The Plaintiffs averr that this material breach of the Easement and SLA is the direct and proximate cause of their damage.

## TRESPASS/CONTINUING TRESPASS

The Plaintiffs aveer that the Defendant intentionally encroached on the Plaintiffs land by unlawfully installing the pipeline, valve, flange and enclosure onto said land. The Plaintiffs averr that this unlawful installation gave the Defendant exclusive use and possession of that property. Therefore, this unlawful and unreasonable trespass, and continuing trespass prevents the Plaintiffs from the use and development of said property.

The Plaintiffs averr that because of the Defendant's willful and wrongful conduct the Plaintiffs have lost their right to use and the enjoyment of their property. Further, that as a direct and proximate cause of the Defendant's willful and wrongful conduct the Plaintiffs property has been physically damaged and risks further damage.

## CONVERSION

The Plaintiffs averr that the Defendant intentionally encroached on Plaintiffs land by unlawfully installing the pipeline, valve, flange, and enclosure onto said land. The Plaintiffs averr that this unlawful installation gave the Defendant exclusive use and possession of that property, including the right and use of the locust trees and other timber on the Property. The Plaintiffs averr that the Defendant unlawfully converted for its own use the Plaintiffs locust trees. Therefore, this unlawful conversion prevents the Plaintiffs from the use of said trees.

The Plaintiffs averr that because of Defendant's unlawful conversion Plaintiffs have lost their right to the enjoyment and use of their property. Further, because of this willful and wrongful conduct Plaintiffs property has been physically damaged and risks further damage.

## FRAUD/MISREPRESENTATION

The Plaintiffs averr that the Defendant made representations to the Plaintiffs to induce the finalization of the Easement. The Plaintiffs averr that Mrs. Lankard signed the SLA under the misrepresentations of Lively and that she justifiably relied on Lively's respresntations.

The Plaintiffs averr that the Defendant defrauded them because they were led to believe that the Unsigned SLA would be recorded, when the Defendant had no intention to actually file said SLA. Further, that as a direct and proximate result of the Defendant's misrepresentations and fraudulent recordation of the invalid SLA, the Plaintiffs have been damaged.

## STANDARD OF REVIEW

In Pennsylvania, a party moving for summary judgment must show that there is "no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert." *Pa.R.C.P. 1035.2(1).*

The Court must view the evidence in the light most favorable to the non-moving party and enter judgment only when there are no genuine issues as to any material facts and the right to judgment is clear as a matter of law. Nationwide Mutual Ins. Co. v. Nixon, 682 A.2d 1310, 1313 (Pa. Super. 1996). Summary judgment is appropriate only in cases that are free from doubt. Elder v. Nationwide Ins. Co., 599 A.2d 996 (Pa. Super. 1991).

Under Pa.R.C.P. 1035.2(1), the motion is brought when there is "no genuine issue of any material fact ... which could be established by additional discovery or expert report." Under Pa.R.C.P. 1035.2(2), the motion is brought "after the completion of discovery relevant to the motion."

## LAW

"It is well established that the same rules of construction that apply to contracts are applicable in the construction of easement grants." Zettlemoyer v. Transcon. Gas Pipeline Corp., 540 Pa. 337, 344, 657 A.2d 920, 924 (1995), *citing Sigal v. Manufacturers Light and Heat Company,* 450 Pa. 228, 234, 299 A.2d 646, 649 (1973); *Percy A. Brown & Co. v. Raub,* 357 Pa. 271, 286, 54 A.2d 35, 43 (1947).

## BREACH OF CONTRACT

"To support a claim for breach of contract, a plaintiff must allege: 1) the existence of a contract, including its essential terms; 2) a breach of duty imposed by the contract; and 3) resultant damage." Woodward v. ViroPharma Inc., No. 3222 EDA 2011, 2013 WL 1485110 (Pa. Super. Ct. Apr. 3, 2013), *citing CoreStates Bank, N.A. v. Cutillo,* 723 A.2d 1053, 1058 (Pa.Super.1999).

Contract interpretation is a question of law. Calabrese v. Zeager, 2009 PA Super 95, 976 A.2d 1151, 1154 (2009), *citing* Kraisinger v. Kraisinger, 928 A.2d 333, 339 (Pa.Super.2007), *quoting* Stamerro v. Stamerro, 889 A.2d 1251 (Pa.Super.2005).

## TRESPASS/CONTINUING TRESPASS

The concept of a "continuing trespass" is defined under the Restatement (Second) of Torts § 161, comment b. (1965) which provides:

> The actor's failure to remove from land in the possession of another a structure, chattel or other thing which he has tortiously erected or placed on the land constitutes a continuing trespass for the entire time during which the thing is wrongfully on the land and ... confers on the possessor of the land an option to maintain a succession of actions based on the theory of continuing trespass or to treat the continuance of the thing on the land as an aggravation of the original trespass.

A "permanent trespass" is defined by the Restatement (Second) of Torts § 162, comment e. (1965) as follows:

> A continuing trespass must be distinguished from a trespass which permanently changes the physical condition of the land. Thus, if one, without a privilege to do so, enters land of which another is in possession and destroys or removes a structure standing upon the land, or digs a well or makes some other excavation or removes earth or some other substance from the land, the fact that the harm thus occasioned on the land is a continuing harm does not subject the actor to liability for a continuing trespass. Since his conduct has once [and] for all produced a permanent injury to the land, the possessor's right is to [a] full redress in a single action for the trespass, and a subsequent transferee of the land, as such, acquires no cause of action for the alteration of the condition of the land.

Pennsylvania courts have adopted the above definitions. Graybill v. Providence Twp., 140 Pa. Cmwlth. 505, 515-16, 593 A.2d 1314, 1319 (1991), aff'd, 533 Pa. 61, 618 A.2d 392 (1993), *See Mancia v. Dept. of Transportation,* 102 Pa.Commonwealth Ct. 279, 517 A.2d 1381 (1986); *County of Allegheny v. Merrit Construction Co.,* 309 Pa.Superior Ct. 1, 454 A.2d 1051 (1982).

"Under Pennsylvania law, the intentional tort of trespass is defined as the 'unprivileged, intentional intrusion upon land in possession of another.'" Abraham v Greater New Castle Cmty. Fed. Credit Union, 2016 U.S. Dist. Lexis 37871. "However, '[c]onduct [that] would otherwise constitute a trespass is not a trespass if privileged.'" *Id.,* Restatement

of Torts (Second) §158, comment e. "One such privilege exists where the intruding party has been granted right of entry pursuant to a valid easement." Abraham, *supra*, *citing* Kennedy v. Consol Energy Inc., 2015 PA Super 93, 116 A.3d 626, 635-36 (Pa. Super. 2015). "It is well-settled law that in order to establish a claim for trespass, a plaintiff must prove an intentional entrance upon land in the possession of another without a privilege to do so." Kennedy, *supra at* 636.

## CONVERSION

"Under Pennsylvania law, the elements to the tort of conversion are: (1) deprivation of another's right of property in, or use or possession of, (2) a chattel, (3) without the owner's consent, and (4) without lawful justification." Carter v. Morrison, No. CIV.A. 06-3000, 2010 WL 701799 (E.D. Pa. Feb. 24, 2010), aff'd sub nom. Carter, 429 F.App'x 114 (3d Cir. 2011), *citing Sims v. Viacom*, No. CIV.A.09–3521, 2009 WL 3856667, n. 5 (E.D.Pa. Nov.17, 2009), (*citing Stevenson v. Economy Bank of Ambridge*, 413 Pa. 442, 197 A.2d 721, 726 (Pa.1964)).

## FRAUD/MISREPRESENTATION

The elements of fraud, or intentional misrepresentation, are " (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." Kit v. Mitchell, 2001 PA Super 94, 771 A.2d 814, 819 (2001), *citing Gruenwald v. Advanced Computer* 730 A.2d 1004, 1014 (Pa.Super.1999), (*citing Gibbs v. Ernst*, 538 Pa. 193, 647 A.2d 882, 889 (1994)). "These elements must be

proven by clear and convincing evidence." *Id., citing Sewak v. Lockhart,* 699 A.2d 755, 759 (Pa.Super.1997). In order to protect those against whom generalized and unsupported fraud may be levied, the Pennsylvania Rules of Civil Procedure require that fraud be "averred with particularity." *Pa.R.C.P. 1019(b)*.

## SPOLIATION OF EVIDENCE

"'Spoliation of evidence' is the non-preservation or significant alteration of evidence for pending or future litigation. When a party to a suit has been charged with spoliating evidence in that suit (sometimes called "first-party spoliation"), we have allowed trial courts to exercise their discretion to impose a range of sanctions against the spoliator." Pyeritz v. Com., 613 Pa. 80, 88–89, 32 A.3d 687, 692 (2011), *See Schroeder v. Com., Dept. of Transportation,* 551 Pa. 243, 710 A.2d 23, 27 (1998).

"[T]he spoliation doctrine is broadly applicable to cases where relevant evidence has been lost or destroyed." *Id.* (internal quotation marks omitted). Mount Olivet Tabernacle Church v. Edwin L. Wiegand Div., 781 A.2d 1263, 1269 (Pa.Super.2001)

> "...given the well-established standard for consideration of summary judgment motions, we hold that the open question about spoliation precludes the entry of summary judgment...Since the early 17th century, courts have admitted evidence tending to show that a party destroyed evidence relevant to the dispute being litigated. Such evidence permitted an inference, the spoliation inference, that the destroyed evidence would have been unfavorable to the position of the offending party. ... [T]he evidentiary rationale [for the spoliation inference] is nothing more than the common sense observation that a party who has notice that [evidence] is relevant to litigation and who proceeds to destroy [evidence] is more likely to have been threatened by [that evidence] than is a party in the same position who does not destroy the document."

Rodriguez v. Kravco Simon Co., 2015 PA Super 41, 111 A.3d 1191, 1196 (2015), *citing* Mount Olivet Tabernacle Church, *supra*, (internal citations and quotation marks omitted) (quoting *Schmid v. Milwaukee Elec. Tool Corp.,* 13 F.3d 76, 78–79 (3rd Cir.1994)).

## DISCUSSION

After a careful review of the file, oral arguments, and in viewing the evidence in the light most favorable to the non-moving party, the Court finds that the crux of the Plaintiffs averrments is that the Defendant intentionally violated the Easement and the SLA, thus resulting in a Breach of Contract claim. This Court disagrees, and finds that the Defendant did not breach said Contracts.

## BREACH OF CONTRACT

The Plaintiffs claims are dependent upon contract interpretation, reserved to the courts. The Contracts in question are the Easement and SLA. This Court finds that the Defendant did not breach the signed Easement and signed SLA. The Easement and SLA define the contractual relationship between the parties and as such were not breached.

The Easement (dated and signed June 21, 2011) granted the Defendant a Right-of-way for the purpose of "Pipeline Installation." *Option to Purchase Pipeline Easement, Exhibit 20 to Defendant's Exhibits in Support of its Motion for Summary Judgment.* Also, the Easement contains additional clauses, references the SLA and further states, "this Agreement constitutes all of the agreements and stipulations of the parties pertaining to the subject matter of this Agreement, superseding all prior verbal agreements, representations or understandings, and may be modified only by a written agreement signed by both parties." *Id. at 10.*

The SLA, dated and signed June 21, 2011, defines additional stipulations regarding the Pipeline installation. The location of the Pipeline is essential to the claims. The SLA defines the location of the Pipeline (this language being the critical language) as, "[s]tay off the

property line at least 50 to 60 feet with centerline of pipeline, as far as practical, to avoid removing excessive amount of trees along the fence line." *SLA, Exhibit 21 to Defendant's Exhibits in Support of its Motion for Summary Judgment.* The Court finds the language of the Easement and SLA is clear and that the Easement and SLA are the legal, controlling, enforceable documents.

The Plaintiffs argue that the Unsigned SLA contains additional stipulations that were not part of the signed SLA and that the misrepresentations of Lively induced Mrs. Lankard into signing the Easement and SLA. Therefore, this Court employs the same reasoning as the Superior Court did in McGuire v. Schneider, Inc., 368 Pa. Super. 344, 351-53, 534 A.2d 115, 119-20 (1987), aff'd, 519 Pa. 439, 548 A.2d 1223 (1988), regarding parol evidence.

Instantly, the Plaintiffs want the Court to allow the introduction of parol evidence which would specifically contradict the written and executed Contracts (here the Easement and the SLA). The Plaintiffs argue that there were stipulations in the Unisgned SLA that were not in the signed SLA, and that Mrs. Lankard was induced into signing the Easement and SLA when relying on misrepresentations of Lively.

In *McGuire*, the Appellee argued that the introduction of parol evidence regarding the misrepresentations of his employment contract were proper. However, the *McGuire* Court found the argument without merit. *Id.* Instantly, the Plaintiffs argue that Lively made misrepresentations to Mrs. Lankard, that the additional stipulations contained within the Unsigned SLA should govern the Contracts and the introduction of parol evidence to contradict the fully executed Contracts is proper. We disagree.

On June 21, 2011, Mrs. Lankard signed an Easement and SLA detailing the specifics of the parties prior negiotations. Therefore, if the parties were not in assent to the terms and conditions contained in the fully executed Contracts, the party aggrieved by such document should protect themself and refrain from signing the Contract(s). Further, it is noted that Mrs. Lankard had prior experience with the oil and gas field, as shown by her Atlas/Chevron lease.

"This is precisely the type of claim that the parol evidence rule was designed to bar. 'If plaintiffs relied on any understanding, promises, representations or agreements made prior to the execution of the written contract..., they should have protected themselves by incorporating in the written agreement the promises or representations upon which they now rely, and they should have omitted the provisions which they now desire to repudiate and nullify.'" *McGuire, supra, citing Bardwell v. Willis Co.,* 375 Pa. at 508-9, 100 A.2d at 105.

> "In *Bardwell v. Willis Company,* 375 Pa. 503, 507, 100 A.2d 102, 104 (1953), our Supreme Court held that only if a party to a contract averred that a promise had been *omitted from* the final, written contract because of fraud, accident, or mistake could parol evidence properly be admitted. After several subsequent decisions which suggested a less restrictive approach, e.g., *Berger v. Pittsburgh Auto Equipment Co.,* 387 Pa. 61, 64-65, 127 A.2d 334, 335 (1956); *Nadolny v. Scoratow,* 412 Pa. 488, 491, 195 A.2d 87, 89 (1963), the Supreme Court reasserted the *Bardwell* holding in *Nicolella v. Palmer,* 432 Pa. 502, 507-8, 248 A.2d 20, 22-23 (1968). This court has subsequently held that where the assertions put forth by one party are specifically contradicted by the written agreement, *Bardwell* applies and parol evidence is admissible only to prove fraud in the execution, not the inducement, of the contract. *Abel v. Miller,* 293 Pa.Super. 6, 10, 437 A.2d 963, 965 (1982); *LeDonne v. Kessler,* 256 Pa.Super. 280, 294 & n. 10, 389 A.2d 1123, 1130 & n. 10 (1978). A party cannot justifiably rely upon prior oral representations, yet sign a contract denying the existence of those representations. *LeDonne v. Kessler,* 256 Pa.Super. at 294 n. 10, 389 A.2d at 1130 n. 10.

McGuire v. Schneider, Inc., 368 Pa. Super. 344, 351-53, 534 A.2d 115, 119-20 (1987), aff'd. 519 Pa. 439, 548 A.2d 1223 (1988)

THIRTEENTH JUDICIAL DISTRICT OF PENNSYLVANIA

Therefore, just as Appellee in *McGuire*, instantly Mrs. Lankard is bound by the terms of the Contracts that were fully executed. Here, the Easement and SLA, that both Mrs. Lankard and the Defendant signed, are the sole enforceable Contracts between the parties. Therefore, because the Defendant precisely followed the Easement and SLA, the Plaintiffs Breach of Contract claim fails.

Further, this Court finds that the intent is clear, after reviewing the lengthy and substantial record, Mrs. Lankard was essentially worried about the removal of the trees along her property line. Specifically, when taken into consideration with the evidence within an additional document titled, "Laurel Mountain Midstream Operating, LLC, Land/Operation, Worksheet," Mrs. Lankard's intent is clear. Mrs. Lankard and Lively signed this "worksheet". *Exhibit 24 to Defendant's Exhibits in Support of its Motion for Summary Judgment*. This "worksheet" states, (with a star beside said language), "[s]tay at least 50-60 feet away from property line as far as practical to save trees along fence line." *Id*.

Furthermore, in the Deposition of Mr. Lankard, he references the correct SLA having reference to a $450.00 payment and after review, the Unsigned SLA does not reference this $450.00 payment. However, the fully executed SLA does. *Dep. Tr. of Mr. Lankard at pgs. 422:9-25, SLA, Exhibit 21 and Unisgned SLA Exhibit 45 to Defendant's Exhibits in Support of its Motion for Summary Judgment.*

Lastly, the Plaintiffs remaining claims will also fail because of the binding, valid and enforceable Contracts between the parties.

## TRESPASS/CONTINUING TRESPASS

First, Trespass/Continuing Trespass claim, the Plaintiffs aveer that the Defendant intentionally encroached on the Plaintiffs land by unlawfully installing the pipeline, valve, flange and enclosure onto said land.

However, the Defendant was privileged pursuant to the valid Easement between the parties granting the right of entry to the Defendant. The Easement and SLA make this encroachment lawful and proper under the Contracts relating to the installation of said Pipeline. Therefore, there can not be an unlawful encroachment and the Plaintiffs claim fails.

## CONVERSION

Secondly, with regard to the Conversion claim, the Plaintiffs averr that the Defendant intentionally encroached on the Plaintiffs land by unlawfully installing the pipeline, valve, flange and enclosure onto said land. Further, that the Defendant unlawfully converted, for its own use, the Plaintiffs locust trees.

However, the Plaintiffs fail to meet the elements necessary for this claim. Specifically, Mrs. Lankard's consent, as contained in the Easement and SLA, deems lawful justification for the Defendant's actions herein. Therefore, this Court finds that this claim fails because of the vaild and enforceable Contracts (the Easement and SLA).

## FRAUD/MISREPRESENTATION

Lastly, with regard to the Fraud/Misrepresentation claim, the Plaintiffs averr that the Defendant made representations to Mrs. Lankard to induce the finalization of the Easement transaction. The Plaintiffs averr that Mrs. Lankard justifiably relied on the misrepresentations

of Lively when she signed the SLA.

However, "where the assertions put forth by one party are specifically contradicted by the written agreement, *Bardwell* applies and parol evidence is admissible only to prove fraud in the execution, not the inducement, of the contract." *McGuire*, supra, *citing Abel v. Miller,* 293 Pa.Super. 6, 10, 437 A.2d 963, 965 (1982).

Furthermore, Mrs. Lankard should have carefully read the contracts (here an Easement and SLA), to ensure that all negioations and terms were to her agreement; otherwise she could have denied signing the Contracts until her wishes were addressed. Just as stated previously, *a party cannot justifiably rely upon prior oral representations, yet sign a contract denying the existence of those representations.*

## SPOLIATION OF EVIDENCE

Regarding the spoilazation of evidence, the Court finds that the Plaintiffs have filed four Motions to Compel Discovery. This Court is satisfied that all discovery was complete and without deficiency. This Court finds that the Plaintiff's Third Motion to Compel was filed with this Court on December 30, 2014, and subsequently "refused" [denied] by retired President Judge Nalitz on December 30, 2015. Fourth Motion to Compel was filed with this Court January 29, 2016. This Court denied said Motion on July 29, 2016.

The Court is aware of the numerous documents and evidence within this action. However, there were no sanctions involving discovery herein and this Court does not find Plaintiffs argument persuasive. The Plaintiffs argue that because of the Defendant's alleged spoliation of evidence, the holding in Rodriguez v. Kravco Simon Co., 111 A.3d 1191, 1196

(Pa. Super. 2015), as a matter of law, precludes the entry of summary judgment. The Court finds this argument is without merit. The Court finds that the numerous emails and various documents throughout this action clearly show the prior negioations of the parties, typical of such a project.

Therefore, the Court finds that Summary Judgment for the Defendant is GRANTED.

## CONCLUSION

AND NOW WHEREFORE, after consideration and finding that that no genuine dispute as to any material fact exists, Defendant's Motion for Summary Judgment is GRANTED.

*SO ORDERED AND DECREED*

ATTEST:                                          BY THE COURT:

_Susan K White_                                  _Farley Toothman_
PROTHONOTARY                                     FARLEY TOOTHMAN, PRESIDENT JUDGE
                                                 Date: 8-25-16