J-A19001-17

2017 PA Super 367

| | |
|---|---|
| S.N.M., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| M.F., | |
| Appellee | No. 868 EDA 2017 |

Appeal from the Order Entered February 27, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): 03-01628
PACSES 056106221

BEFORE: BENDER, P.J.E., DUBOW, J., and MUSMANNO, J.

OPINION BY BENDER, P.J.E.:                        **FILED NOVEMBER 20, 2017**

S.N.M. (Mother) appeals from the February 27, 2017 order that dismissed the paternity action filed by M.F. (Father), who the court determined was not the biological father of J.M. (Child), born in August of 2003. After review, we reverse.

On September 6, 2016, Father filed a motion to establish paternity and for genetic testing regarding Child. A hearing was scheduled for December 21, 2016, and was attended by Mother, Father, and Donna Marcus, an ADA with the Philadelphia District Attorney's Office, who is essentially

representing Mother in this matter pursuant to 23 Pa.C.S. § 4306.[1]  The trial court's opinion, filed pursuant to Pa.R.A.P. 1925(a), describes the factual and procedural background of this case, stating:

> [Father] testified, *inter alia*, that he had been incarcerated for eight years, including during the birth of the child, and he had doubts as to whether he was the biological father of [C]hild.
>
> At the time of the hearing, there was no outstanding order for support running against [Father].  Mother testified that a custody order was entered between the parties in 2003, and as a result, [Father] was required to sign an Acknowledgment of Paternity.  This court took into consideration [Father's] eight-year period of incarceration during which time he had no custody with [C]hild, [Father's] testimony of his subsequent doubts as to paternity, and the fact that he filed his motion for genetic testing shortly after his release from prison in April 2016, and determined those as significant factors weighing against a finding of paternity by estoppel.[2]  As a result, this court entered its order on December 21, 2016, as follows:
>
> > MOTION TO ESTABLISH PATERNITY FILED SEPTEMBER 6, 2016 IS RESOLVED AFTER A HEARING.  DEFENDANT, [FATHER], PLAINTIFF, [MOTHER], AND THE MINOR CHILD, … SHALL GO FORTHWITH TO THE PHILADELPHIA FAMILY COURT GENETIC TESTING LAB, … FOR GENETIC TESTING TO BE CONDUCTED.  MATTER TO BE RELISTED UPON AVAILABILITY OF RESULTS.

---

[1] Specifically, section 4306(b) states that "[t]he district attorney, upon the request of the court or a Commonwealth or local public welfare official, shall represent any complainant in any proceeding under this subchapter."

[2] To clarify this statement by the trial court, we note that the record reveals Father's incarceration during the first three weeks of Child's life, but that during the next five years Mother and Father shared legal and physical custody of Child pursuant to a custody agreement that was entered as an order of court.  **See** N.T., 12/21/16, at 5-7.  In fact, Father testified that for the first five years of Child's life, he was involved in Child's life "on a daily basis."  **Id.** at 6.

Twenty minutes after the conclusion of the hearing, ADA Marcus requested that the motion be recalled to orally request a stay of genetic testing, which this court denied.

Immediately following the hearing, both parties and [C]hild submitted to genetic testing at the Philadelphia Family Court's genetic testing unit. Results of genetic testing were received and docketed on January 3, 2017, and notices were sent to the parties of a hearing scheduled administratively for March 14, 2017, at 9:00 a.m., in a different courtroom tha[n] that of the undersigned judge. The docketed results indicated that the probability of paternity for [Father] was 0%.

On January 10, 2017, [ADA] Marcus filed [a] … Petition for Reconsideration of the order of December 21, 2016. Thereafter, on February 1, 2017, this court entered its order denying Mother's Petition for Reconsideration, as follows:

> COMMONWEALTH'S PETITION FOR RECONSIDERATION OF PATERNITY OF ORDER ENTERED BY THIS COURT AFTER A HEARING ON DECEMBER 21, 2016, AND FILED BY ADA DONNA MARCUS ON JANUARY 6, 2017, IS DENIED AFTER REVIEW. THE GENETIC TESTING RESULTS THAT ARE PART OF THE COURT FILE INDICATE THAT [FATHER], PETITIONER IN THE UNDERLYING MOTION FOR GENETIC TESTING[,] IS EXCLUDED AS THE BIOLOGICAL FATHER OF MINOR CHILD….

On March 10, 2017, [ADA] Marcus filed a Notice of Appeal along with a Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b) of the February 27, 2017, order in this matter. [*See infra*.] [ADA] Marcus did not appeal from either the December 21, 2016, final order entered by this court or from the February 1, 2017, order denying reconsideration of that final order. This court believes that it is significant that the undersigned judge never signed the administrative order docketed on February 27, 2017, and in fact, the undersigned judge never saw the unsigned administrative order until this judge received it as an attachment to [ADA] Marcus' Notice of Appeal. The administrative order provides as follows:

> AND NOW, THIS FEBRUARY 27, 2017, IT IS HEREBY
> ORDERED THAT DEFENDANT IS NOT THE BIOLOGICAL
> FATHER OF THE CHILD…, BORN … TO [MOTHER] AND
> THIS PATERNITY ACTION IS DISMISSED.

Trial Court Opinion (TCO), 3/27/17, at 1-3 (citations to the record omitted).

As noted, the court explained that the February 27, 2017 order was administratively entered as a computer-generated order through the Giant Activity Matrix (GAM). Moreover, the opinion appears to suggest that the court believes the final order from which an appeal should have been taken was the December 21, 2016 order, directing the parties to submit to genetic testing, or from the February 1, 2017 order, denying reconsideration of the December 21st order. Therefore, the court seems to intimate that the appeal in this matter was untimely, having only been filed on March 10, 2017, more than thirty days after the December 21st and February 1st orders were entered.[3] Thus, based on its discussion of the reasons for its determination, the trial court requests that this Court quash this appeal.

_____

[3] The court also found that ADA Marcus did "not have standing to bring the instant appeal on behalf of the Commonwealth since there was no child support action in existence at the time of the December 21, 2016 hearing." TCO at 4 (emphasis added). The court further stated that "[t]he [c]omplaint for [s]upport on behalf of the Department of Public Welfare was not filed until January 3, 2017, after the genetic testing results were entered…." *Id.* Initially, we note that ADA Marcus is the named attorney on this Court's docket for Mother in connection with this appeal. Moreover, neither a party nor the court raised an objection to ADA Marcus' representation of Mother at the time of the December 21, 2016 hearing. Additionally, since this appeal was filed on March 10, 2017, and the support action was instituted on January 3, 2017, ADA Marcus' representation of Mother is proper under the circumstances. ADA Marcus' status at the time of the December 21, 2016 hearing does not impact her status in connection with this appeal.

We now turn to the issues raised by ADA Marcus in Mother's appeal:

I. Did the trial court err when it granted [Father's] motion to establish paternity and ordered genetic testing, even though paternity had already been established when [Father] was adjudicated as the father of [C]hild in 2003 by signing an Acknowledgement of Paternity and the doctrine of paternity by estoppel applied since [Father] has held himself out as the father for thirteen (13) years?

II. Did the trial court err when, after receiving the genetic testing results, the court cancelled the scheduled hearing on the genetic testing results, sua sponte, and entered a final order declaring that [Father] is not the biological father of the child in question, thus precluding [Mother's] opportunity to present testimony or challenge the legality of the entry of the genetic testing results into evidence?

Mother's brief at 4 (footnote omitted).

Before addressing Mother's issues, we must determine whether the appeal before us is timely. *See* Pa.R.A.P. 903(a) ("Except as otherwise prescribed by this rule, the notice of appeal required by Rule 902 … shall be filed within 30 days after the entry of the order from which the appeal is taken."). As noted above, the court suggests that the appeal should have been filed after the entry of the December 21, 2016 order or the February 1, 2017 order, but it was not filed until March 10, 2017. However, our review reveals that these orders were not final. *See* Pa.R.A.P. 341 (a) (stating "an appeal may be taken as of right from any final order of a … trial court"); (b) ("A final order is any order that … disposes of all claims and of all parties[.]"). Despite lacking finality, we are aware that Mother could have appealed after their entry pursuant to the holding in ***Jones v Trojak***, 634

- 5 -

A.2d 201, 205 (Pa. 1993) (stating an appellate court in Pennsylvania may "review court ordered blood tests at the interlocutory stage"). Moreover, we recognize that a hearing remained scheduled for March 14, 2017, to address the results of the genetic test and provide an opportunity to the parties to submit evidence. It was not until the issuance of the February 27, 2017 order, declaring that Father was not Child's biological parent and dismissing the paternity action, that a final order was issued. Implicit in the dismissal was a cancellation of the March 14, 2017 hearing. At that point, disposal of all claims and parties was accomplished and the thirty-day appeal period began to run. Mother will not be penalized for choosing to wait until the final order in this matter was entered. Accordingly, the appeal to this Court on March 10, 2017, was timely.

With regard to Mother's first issue, her argument is two-fold: 1) that paternity was established when Father signed the acknowledgment of paternity and he did not provide evidence to rescind it; and 2) that the court ignored the doctrine of paternity by estoppel and failed to balance that against the continuing custody order and the relationship between Father and Child.[4]

---

[4] We note that our standard of review in paternity matters is that of an abuse of discretion. *T.E.B. v. C.A.B.*, 74 A.3d 170, 173 n.1 (Pa. Super. 2013).

Mother first contends that the court abused its discretion in granting genetic testing and then declaring that Father is not Child's biological father. She bases this argument of Father's signing an acknowledgment of paternity thirteen years ago, shortly after Child's birth. This concept is governed by 23 Pa.C.S. § 5103 (a), (d) and (g), which states:

> **(a) Acknowledgment of paternity.**—The father of a child born to an unmarried woman may file with the Department of Public Welfare, on forms prescribed by the department, an acknowledgment of paternity of the child which shall include the consent of the mother of the child, supported by her witnessed statement subject to 18 Pa.C.S. § 4904 (relating to unsworn falsification to authorities). In such case, the father shall have all the rights and duties as to the child which he would have had if he had been married to the mother at the time of the birth of the child, and the child shall have all the rights and duties as to the father which the child would have had if the father had been married to the mother at the time of birth. The hospital or other person accepting an acknowledgment of paternity shall provide written and oral notice, which may be through the use of video or audio equipment, to the birth mother and birth father of the alternatives to, the legal consequences of and the rights and responsibilities that arise from, signing the acknowledgment.
>
> …
>
> **(d) Conclusive evidence.**—Notwithstanding any other provision of law, an acknowledgment of paternity shall constitute conclusive evidence of paternity without further judicial ratification in any action to establish support. The court shall give full faith and credit to an acknowledgment of paternity signed in another state according to its procedures.
>
> …
>
> **(g) Rescission.**—
>
> (1) Notwithstanding any other provision of law, a signed, voluntary, witnessed acknowledgment of paternity subject to 18

Pa.C.S. § 4904 shall be considered a legal finding of paternity, subject to the right of any signatory to rescind the acknowledgment within the earlier of the following:

(i) sixty days; or

(ii) the date of an administrative or judicial proceeding relating to the child, including, but not limited to, a domestic relations section conference or a proceeding to establish a support order in which the signatory is a party.

(2) After the expiration of the 60 days, an acknowledgment of paternity may be challenged in court only on the basis of fraud, duress or material mistake of fact, which must be established by the challenger through clear and convincing evidence. An order for support shall not be suspended during the period of challenge except for good cause shown.

In *R.W.E. v. A.B.R.*, 961 A.2d 161 (Pa. Super. 2008), a case involving an acknowledgement of paternity, this Court stated:

A signed, witnessed, voluntary acknowledgment of paternity shall be considered a legal finding of paternity if it is not rescinded by the signatories within sixty days of its signing. 23 Pa.C.S. § 5103(g)(1). After sixty days, the acknowledgment may only be challenged in court on the basis of fraud, duress or material mistake of fact, if established by the challenger through clear and convincing evidence. 23 Pa.C.S.[] § 5103(g)(2).

*Id.* at 167. Thus, because Father signed the acknowledgment of paternity and presented nothing to show fraud, duress or material mistake of fact, the paternity of Child was established and cannot be challenged at this point. *See D.M. v. V.B.*, 87 A.3d 323, 327 (Pa. Super. 2014) (stating "[t]he entry of a support order necessarily determines the issue of paternity" and "putative father is precluded from challenging paternity even if subsequently performed blood tests exclude him as the child's biological father"). *See*

*also Wachter v. Ascero*, 550 A.2d 1019, 1021 (Pa. Super. 1988) (stating that "blood test should not have been ordered … even for humanitarian purposes, and should never be ordered unless it is to establish paternity in a proceeding where paternity is a relevant fact and has not already been determined in a prior proceeding"). Here, the custody agreement, made an order of court, is such a proceeding that determined paternity. Accordingly, the trial court abused its discretion in granting the genetic testing.

Additionally, we recognize that the trial court relied on the fact that no support order was in existence at the time these proceedings were instituted, but it overlooked the custody agreement that was made an order of court. This custody order is to be construed to have the same effect as a support order in determining the issue of paternity, particularly, because in this case Father signed the acknowledgment of paternity. *See* 23 Pa.C.S. § 5103(g)(1)(ii). This section of the law emphasizes that the signing of an acknowledgment of paternity is considered a legal finding of paternity, but also indicates that a judicial proceeding relating to the child is not limited to a proceeding to establish a support order. Thus, the trial court abused its discretion in so concluding.

Furthermore, the court erred by relying on a humanitarian purpose in its reasoning as stated in the notes of testimony:

> **THE COURT**: Well, I'm going to grant it and I'm telling you the reason why.
>
> I'm going to grant it because even if you are his biological father I think it's better for [Child] to know for sure and for both mom

and dad to know. There is a doctrine call Paternity by Estoppel and I think that's what the Commonwealth attorney is objecting on those grounds because you held yourself out.

But, my concern at this point in time is to make sure that if you are not his biological father that I think -- if he has any kind of medical issues in the future it's better for him to know who his biological parents are. Okay.

N.T., 12/21/16, at 7-8. *See Wachter*, *supra*.

Mother also sets out arguments relating to the doctrine of paternity by estoppel and her allegation that the court violated her due process rights by entering the order establishing paternity without first holding a hearing, *i.e.*, the previously scheduled March 14th hearing. We agree with Mother's positions on both of these arguments. However, in light of our conclusion that the court abused its discretion in granting the petition for genetic testing, we need not address those arguments. Thus, we conclude that although Father is not Child's biological father, he remains Child's legal father together with all that designation implies. Accordingly, we reverse the trial court's order to the extent its dismissal of the paternity action contradicts Father's status as Child's legal father.

Order reversed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/20/2017